ACCEPTED
06-14-00204-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
6/5/2015 11:13:30 AM
DEBBIE AUTREY
CLERK

## NO. 06 – 14-00204 – CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
6/5/2015 11:13:30 AM
DEBBIE AUTREY
Clerk

IN THE SIXTH DISTRICT COURT OF APPEALS
TEXARKANA, TEXAS

**CLIFFORD BERNARD NELSON**
**Appellant,**

**v.**

**THE STATE OF TEXAS**
**Appellee**

On appeal from the County Court at Law No. 1 for Gregg County, Texas
Trial Court Case No. 2013-1871

## BRIEF OF THE STATE OF TEXAS

**– ORAL ARGUMENT NOT REQUESTED --**

**CARL DORROUGH**
**DISTRICT ATTORNEY**
**GREGG COUNTY, TEXAS**

Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
Gregg County, Texas
101 East Methvin St., Suite 333
Longview, Texas  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................1

INDEX OF AUTHORITIES .........................................................................3

SUMMARY OF THE ARGUMENT ...................................................10

ARGUMENT.........................................................................................11

1) Erica Minifield's statement to police was admissible either as a present sense impression or as a statement made to enable officers to respond to an ongoing emergency, or to rebut Erica's statement that she could not recall who attacked her. ..................11

    A.   *Standard of review: Was the Trial Court's admission of Erica's recorded statement outside the zone of reasonable disagreement and therefore an abuse of her discretion?*....................11

    B.   *The statement was an exception to hearsay rule because it was her present sense impression.* ......................................................13

    C.   *Her statement to officers was made to enable them to respond to an ongoing emergency.* .......................................................14

    D.   *Although the State did not originally seek to introduce the police video as impeachment, that eventually became a part of her argument.* ................................................................................16

    E.   *If a court admits evidence that is admissible under any rule of law, she has not abused her discretion.* .........................................16

    F.   *The improper admission of hearsay statement is not reversible error if the same facts are admitted by other, properly admitted evidence.* .................................................................17

    G.   *Erica was present to testify and the defense was allowed to cross-examine her; the judge heard her testify and was free to disbelieve her testimony.* ...............................................................18

2)   The evidence was more than sufficient to support the conviction. ................................................................................................19

    A.   *Standard of review: whether, viewing all the evidence in the light most favorable to the judgment, could a reasonable fact*

*finder have found all the necessary elements had been proved beyond a reasonable doubt.* .....................................................20

B.    *Hypothetical jury charge contains the essential elements of the offense.*..............................................................................................20

A.    *The only disputed element is the identity of the person who inflicted the injuries to Erica, and ample evidence supports the finding that Clifford Nelson did it.* ................................................21

**CONCLUSION AND PRAYER** ...............................................................................**24**

**CERTIFICATE OF SERVICE** ................................................................................**25**

**CERTIFICATE OF COMPLIANCE** .......................................................................**26**

# INDEX OF AUTHORITIES

## Federal Cases

*Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)*.. 13

*Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)*
.................................................................................................*14, 15, 16*

*Jackson v. Virginia, 443 U.S. 307. 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)*20, 21

## State Cases

*Anderson v. State, 717 S.W.2d 622 (Tex. Crim. App. 1986)*...................................... 19

*Clayton v. State, 235 S.W.3d 772 (Tex. Crim. App. 2007)* ........................................ 20

*Garcia v. State, 212 S.W.3d 877 (Tex. App.—Austin 2006, no pet.)* ......................... 15

*Malik v. State, 953 S.W.2d 234 240 (Tex. Crim. App. 1997)*..................................... 20

*Martinez v. State,236 S.W.3d 361, 375, 2007 Tex. App. LEXIS 5712, 2007 WL
 2067852, at \*1, 9--10 (Tex. App.--Fort Worth 2007, no pet. h.)* ........................ 15

*Montgomery v. State, 810 S.W.2d 372(Tex. Crim. App. 1990*.................................... 12

*Mosley v. State, 141 S.W.3d 816, 830 (Tex. App.--Texarkana 2004, pet. ref'd).* ..... 11

*Patrick v. State, 906 S.W.2d 481 (Tex. Crim. App. 1995)* ........................................ 21

*Romero v. State, 800 S.W.2d 539 (Tex. Crim. App. 1990)* ........................................ 16

*Santacruz v. State, 237 S.W.3d, 822, 829 pet. ref'd untimely filed.)* ................. 14, 15

*Simmons v. State, 282 S.W.3d 504 (Tex. Crim. App. 2009)*....................................... 21

*State v. Story, 445 S.W.3d 729 (Tex. Crim. App. 2014)*...................................... 17, 19

*Torres v. State, 71 S.W.3d 758 (Tex. Crim. App. 2002)* ........................................... 12

## State Rules

*Tex R. App. Proc, Rule 9 (2012)*................................................................................ 26

*Tex. R. Evid. 803* ................................................................................................. 13, 22

## STATEMENT OF FACTS

Appellant Clifford Nelson was charged by complaint and information for assaulting Erica Minifield on or about April 30, 2013; Ms. Minifield, also known as Erica Akins, was alleged to be a member of Nelson's family and household and someone with whom he had a dating relationship. CR 5-6.

Erica Rochelle Minifield Akins[1] testified she and Nelson had two children, ages 18 and 19.  2 RR 39.

On or about the date in question, she was severely beaten, and the police took a video of her injuries.  SX 1.  The video, created by Officer Trevor Yates, was admitted over several objections, but the objections were limited to the audio portion, specifically the statement by Erica that Clifford Nelson had been the person who attacked her with a stick. 2 RR 13-20. The prosecutor, Pam Ibeh, and officer Yates established that the camera worked, Yates was capable of operating it, Yates had reviewed it, it fairly and accurately represented what he saw that night, and it had not been altered in any way. 2 RR 13-16.  Over defense objection that the proper predicate had not been laid, the court admitted the video. 2 RR 18.

---

[1] The indictment and various witnesses referred to this witness by the name Erica Minifield, but she used the last name Akins.  For consistency's sake, she will be Erica in this brief.

Then defense counsel objected to the video on hearsay grounds, and Crawford grounds. 2 RR 17. The Court overruled the objection because the declarant had been present in the courtroom and had been sworn in as a witness. 2 RR 17-18.

Next, Nelson's attorney called it premature impeachment or bolstering, and hearsay, to which the prosecutor responded that the recording was made in the course of law enforcement responding to this emergency, so it was made right after it happened, which made it an exception to the hearsay rule. 2 RR 18.

Defense counsel then challenged the lack of evidence on the amount of time that had passed, and reiterated his *Crawford*, confrontation, premature impeachment and bolstering, adding "confrontation, due process, civil protection". 2 RR 19.

The prosecutor then suggested that the statement was a present sense impression because the officer had testified to seeing fresh blood[2] when he first saw Erica and the video was made just after she arrived at the hospital and she described an event that had occurred immediately before she told it. 2 RR 19. The Court overruled the objection, admitting the video, and the defense attorney established a running objection to the audio portion of the video. 2 RR 19.

---

[2] The video was eventually played, showing bright red blood on her scalp, and darker, clotted blood elsewhere—the elbow and the shins. 2 RR 19-20; SX 1

When technical difficulties prevented showing the video at that point, the Court and prosecutor had a conversation in which they established that Ms. Ibeh believed Erica's testimony may differ somewhat from the contents of the video, and the prosecutor would offer the video to rebut her testimony if Erica's testimony was different. 2 RR 24.

When Ms. Ibeh attempted to get Officer Yates to expound on his having seen fresh blood, the Court sustained a defense objection to establishing the timing of the statement on the basis of the blood's appearance. 2 RR 27.

The judge then watched the video, after which she heard and overruled a renewed *Crawford* objection to it because it was testimonial. 2 RR 28. To his continued hearsay objection, she responded "And this is a bench trial. And in the interest of time, I've been advised that this witness will testify and that she may change her story from this. So if, at the end of this case, you're right, then we'll reconsider all that, okay? 2 RR 28-29.

The remainder of the evidence regarding Nelson's being the attacker came from the following:

Dr. Harold Taylor, ER physician, who, in the course of diagnosing and treating Erica, learned that she had been hit with a stick by Clifford Nelson. 2 RR 33. The defense objection to hearsay was overruled as an exception for medical treatment 2 RR 33.

6

Erica then testified, and as predicted, her testimony contradicted what she had said in the video to police on the night the event happened. 2 RR 39, 40. Her trial testimony was that nothing happened on April 28, 2013. She did tell the Court she had been absent from a July hearing in this case because she had been in the hospital for broken ribs. 2 RR 56. She claimed not to know her assailant on that occasion either. 2 RR 56.

When shown the pictures of herself with injuries, she recognized herself in the pictures, but refused to admit she knew who did this to her. 2 RR 44-45; SX 2a, 2b, 2c, 2d. Even after being shown the video, SX 1, she still claimed not to remember who injured her. 2 RR 46. She recalled talking with Rhonda Lilly on the day after the assault, but denied being able to recall telling her who caused the injuries. 2 RR 47. She acknowledged that the injuries occurred in Longview, Gregg County. 2 RR 47. And she described her injuries as painful. 2 RR 47-48.

On cross, Erica stated Clifford Nelson did not do this to her; on redirect, she said she was not sure it was Clifford; and on recross examinations she was sure he did not do it, and she was not sure who did it, but she knew it was to Clifford. 2 RR 49, 54, 59-60.

Following Erica's testimony, Jason Barnes, the paramedic with the Longview Fire Department who responded to the call for assistance for Erica, testified that Erica said her assailant (her baby daddy) had used his fist and a stick similar to a

7

walking stick. 2 RR 61-62, 64. She was conscious and communicating and stable at the time she made those statements. 2 RR 66.

Dr. Taylor was recalled to impeach Erica's testimony about two hospital visits just prior to the trial, on or about July 8 and 18, 2014. 2 RR 69, 71. Clifford Nelson had accompanied Erica to the first of those visits, and had given most of the history, claiming that Erica had been kicked by a horse. 2 RR 70, 72. Dr. Taylor asked that police be notified because her injuries were not at all consistent with a horse kick. 2 RR 71. When Nelson was out of earshot during her CT scan, Erica told Eric Pope that her injuries had been caused by the man who had brought her in, and Pope identified Nelson as the man who had been with her. 2 RR 86-89. Her injuries were a collapsed lung, fractured ribs, a concussion, and contusion to the forehead. 2 RR 70-72. In her testimony, Erica had said she had been assaulted near Grandy's. 2 RR 56.

Rhonda Elaine Daniels Lilly, who prefers the name Daniels, testified she had been present when Erica was assaulted in April, 2013. 2 RR 74. Eventually she admitted telling police truthfully that Erica had told Daniels that Clifford Nelson, the father of at least some of Erica's children, had been the attacker. 2 RR 80-84.

Brooke King, director of programs and services at the Women's Center of East Texas, 3 RR 66. She testified only to her experience with family violence

victims in general, not to anything specific to Erica. She gave her opinion on why a victim might give exonerating testimony about an actual attacker.

## SUMMARY OF THE ARGUMENT

Admission of Erica Minifield's statement to police was not reversible error. It was admissible under at least one of three theories: it was a present sense impression; it was a statement made to enable police to respond to an ongoing emergency, or it was offered to rebut her anticipated statement that she could not recall who attacked her. She was present and available to testify. Whichever theory of admissibility the judge selected, her ruling to admit is not reversible if the statement was admissible under any rule of law, even if the trial court states the wrong rule. Improper admission of a hearsay statement is not reversible if the same facts are admitted by other, properly admitted evidence, as they were in this case, by three other witnesses.The judge heard Erica's testimony and the testimony of others rebutting her testimony, and chose to believe the others over Erica.

Viewing all the evidence in the light most favorable to the judgment, a reasonable fact finder could easily have found all the necessary elements had been proved beyond a reasonable doubt. The only contested element was the identity of the attacker. Erica's testimony was contradicted by three witnesses, two disinterested medical personnel and a friend of Erica's, all of whom testified that Erica had told her Nelson was the attacker.

10

# ARGUMENT

**1) Erica Minifield's statement to police was admissible either as a present sense impression or as a statement made to enable officers to respond to an ongoing emergency, or to rebut Erica's statement that she could not recall who attacked her.**

In Appellant's first point of error, he questions whether that the trial court erred in allowing the State to impeach Erica Minifield Akins with her prior inconsistent statement. The State originally offered the statement as a present sense impression and as a statement made to enable officers to respond to an ongoing emergency. 2 RR 18, 19. The State also eventually argued that the purpose of offering that statement was to impeach Erica, if, as the State had predicted, did testify that she didn't recall telling officers that Clifford Nelson was her attacker. 2 RR 24.

**A. Standard of review: Was the Trial Court's admission of Erica's recorded statement outside the zone of reasonable disagreement and therefore an abuse of her discretion?**

The admission of hearsay evidence is a question for the trial court to resolve and its determination will be reviewed under an abuse of discretion standard. *Mosley v. State*, 141 S.W.3d 816, 830 (Tex. App.--Texarkana 2004, pet. ref'd). A trial court's decision will not be disturbed unless it lies outside the zone of

11

reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990 on reh'g (June 19, 1991)).

On appeal, the trial court's decision to admit evidence is reviewed under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). As long as the trial court's ruling is within the zone of reasonable disagreement, the appellate court will not intercede. *Montgomery*, 810 S.W.2d, 391(op. on reh'g). It is only where the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that the proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be that the trial court has abused its discretion in admitting the evidence. *Id.*

The United States Supreme Court has said, regarding statements in response to police interrogation:

> Without attempting to produce an exhaustive classification of all conceivable statements--or even all conceivable statements in response to police interrogation--as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

Pursuant to the *Crawford* case, a trial judge must make an ad hoc, case-*Id.* statement is testimonial, the prosecution must either produce the declarant, or show that (1) the declarant is unavailable and (2) the defendant had an opportunity to question the declarant. *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Therefore, even if the judge had considered the statement testimonial, as long as the State presents the declarant to testify and to be subjected to cross-examination, her statement is admissible, or, if inadmissible, harmless error.

### B. The statement was an exception to hearsay rule because it was her present sense impression.

Rule 803 contains exceptions to the rule against hearsay regardless of whether the declarant is available as a witness. Present sense impressions are not excluded. Tex. R. Ev. 803 (a) (1). A present sense impression is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." *Id.*

State's Exhibit One was a video recorded by Officer Trevor Yates. The police were trying to find out why Erica had been brought to the hospital. She was able to communicate very clearly. She told them Clifford Nelson, her kids' father, had hit her with his fist and a short stick about the size of her hand in thickness. She said she had blacked out more than once, and her lack of consciousness was

13

caused by being hit with the stick. She said that she and Nelson were "still together." She said she wanted to press charges. She told them the location of the attack. He had always been jealous of her, and often accused her of being with other men, and she said that jealousy of "some dudes" in a truck was his alleged provocation on this occasion. She said her injuries were "all over" her body. Officer Yates focused the camera on the blood on her face, her scalp, her elbow, and her shins. SX 1. She added, at the end, that she could not believe that he had done this to her.

### C. Her statement to officers was made to enable them to respond to an ongoing emergency.

Defense counsel made an issue at trial of the fact that time had passed since the assault and Erica had been moved twice since the assault. The 14th Court of Appeals has discussed this issue. *Santacruz v. State*, 237 S.W.3d 822, 828-829 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The *Santacruz* opinion says that the caller does not have to be describing events as they happened, with the perpetrator present for the statements to be "made under circumstances objectively indicating that the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency. *Id*, citing *Davis*, 547 U.S. 813 The *Santacruz* case also cites cases from three other Courts of Appeals in which statements to police about past events had been held to be nontestimonial.

14

Courts applying *Davis* have held statements to be nontestimonial even though they were not describing events as they were happening. See, e.g., *Martinez v. State*,236 S.W.3d 361, 375, 2007 Tex. App. LEXIS 5712, 2007 WL 2067852, at *1, 9--10 (Tex. App.--Fort Worth 2007, no pet. h.) (holding that statements made by appellant's son were nontestimonial under *Davis,* even though they described past events in which appellant gave son a bag to hide in his pants); *Garcia v. State*, 212 S.W.3d 877, 883-84 (Tex. App.—Austin 2006, no pet.)(holding that statements made by wife were nontestimonial under Davis, even though they described past events in which her husband had forcibly abducted his child in violation of a court order); *Delacueva v. State*, No. 14-05-01115-CR, 2006 Tex. App. LEXIS 10563, 2006 WL 3589482, at *3 (Tex. App.--Houston [14th Dist.] Dec. 12, 2006, pet. ref'd) (not designated for publication) (holding that statements made by appellant's girlfriend were nontestimonial under *Davis*, even though they described past events in which boyfriend had "beat up" girlfriend).

*Santacruz v. State*, 237 S.W.3d 822, 829 (Tex. App. 2006 pet. ref'd untimely filed.)

In this case the circumstances were that Erica was still at the hospital seeking medical treatment--not at the police station. The officers, in order to assess their situation, needed to know with whom they would be dealing, whether the perpetrator was a threat to the officers' safety, and whether there was a possible continuing danger to the victim or other potential victims. She and her husband were still together. He had not been apprehended. Until she made the statement, he had not been named as the perpetrator. The police did not know whom to arrest, or even whether she wanted anybody arrested. These questions were not for a testimonial purpose, but for the purpose of responding to an ongoing emergency.

15

**D. Although the State did not originally seek to introduce the police video as impeachment, that eventually became a part of her argument.**

Defense Counsel argued that the prosecutor had not laid the proper predicate for impeachment by allowing Erica to testify first before offering the video. The judge heard this objection and may have thought the prosecutor got the evidence out of order, but the judge commented that this was a bench trial, suggesting that a jury might have been confused by the order of evidence presentation, but the judge herself was not. In the interest of saving time, the judge allowed the video to come in with only the predicate of Officer Yate's testimony regarding the quality of the camera, the operator, and that he had reviewed the video and it accurately depicted the events he observed that night. 2 RR 28-29. Eventually, Erica did testify that she had no recollection of her attacker, even after she was shown the video. If this was error, it was not reversible error, as other witnesses' testimonies were properly admitted proving the same element—that Nelson was the attacker.

**E. If a court admits evidence that is admissible under any rule of law, she has not abused her discretion.**

If a trial judge's decision to admit certain testimony is correct on any theory of law applicable to the case, it will be upheld. This is true whether or not she states the correct ground. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

16

The Court of Criminal Appeals cited *Romero* for this same proposition as recently as 2014: "We will uphold the judgment if it is correct on some theory of law applicable to the case, even if the trial judge made the judgment for a wrong reason." *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

### F. The improper admission of hearsay statement is not reversible error if the same facts are admitted by other, properly admitted evidence.

The improper admission of hearsay evidence "does not constitute reversible error if the same facts are proved by other, properly admitted evidence." *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986).

In addition to the police video of Erica's stating that Clifford Nelson had assaulted her, the State also showed the she told Dr. Taylor, an emergency room doctor at Longview Regional, who testified on the 28th or 29th of 2013, Erica also told him she got her injuries when Clifford Nelson hit her with a stick. 2 RR 33. The defendant's objection to hearsay was overruled as an exception for medical treatment. 2 RR 33.

Furthermore, Jason Barnes, the paramedic with the Longview Fire Department, who responded to the call for assistance for Erica on April 28, 2013, testified that Erica told him her assailant (her baby daddy) had used his fist and a stick similar to a walking stick. 2 RR 61-62, 64. She was conscious and

17

communicating and stable at the time she made those statements. 2 RR 66. Defense objection to hearsay was overruled as the statement was made to obtain medical treatment. 2 RR 64-65.

Finally, Rhonda Elaine Daniels Lilly, Erica's friend who had been with her at the time of the assault, was called to rebut Erica's testimony that Erica did not recall telling Daniels who had assaulted her. 2 RR 47.

Daniels at first testified that she did not recall hearing Erica say who had assaulted her, but after having her memory refreshed by the police recording, acknowledged that she had told police that Erica had told Daniels that Nelson was the assailant. 2 RR 74, 77, 80. Daniels continued to claim that she had not seen the assailant that day. When pressed, however, Daniels testified she had not been lying to police about Erica's naming Nelson as her attacker. 2 RR 84.

Thus, with three other witnesses testifying to the fact that Erica had named Nelson as her attacker, the admission of the video of Erica saying the same thing to police was not reversible error.

### G. Erica was present to testify and the defense was allowed to cross-examine her; the judge heard her testify and was free to disbelieve her testimony.

The fact finder in this case was the judge, not a jury. The State made the Court aware in opening argument that the State expected Erica's trial testimony to differ from her video statement to the police. Erica was present and had been sworn,

18

but had not testified, at the time the video of her hospital statement to police was shown, over the objection of defense counsel. In her subsequent testimony, as predicted in opening argument, Erica was unable or unwilling to name her attacker, even though she knew she had named her attacker in her statement to police, to the ER doctor, to the EMT, and to her friend Daniels.

The judge was the sole trier of fact, and an appellate court gives almost total deference to a trial judge's determination of historical facts. *Story*, 445 S.W.3d, at 732. The trier of facts may believe some, all, or none of a complainant's testimony. This judge chose to believe what Erica had said at or near the time of the offense, rather than what Erica was saying at trial. That belief is totally supported by evidence in the record, whether it was admissible or not. Erica's credibility was severely tested during this trial. Numerous inconsistencies were shown, and testimony was adduced that a family violence victim often recants her initial story.

Appellant's first issue should be rejected.

## 2) The evidence was more than sufficient to support the conviction.

Appellant argues that there was conflicting evidence, and that without Erica's prior inconsistent statement to police, there is no evidence of Nelson's guilt.

**A.** **Standard of review: whether, viewing all the evidence in the light most favorable to the judgment, could a reasonable fact finder have found all the necessary elements had been proved beyond a reasonable doubt.**

"Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307. 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The *Jackson* Court went further to say, a "court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

**B.** **Hypothetical jury charge contains the essential elements of the offense.**

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

All evidence, properly or improperly admitted, is reviewed. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as

probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Patrick v. State*, 906 S.W.2d 481, 488 (Tex. Crim. App. 1995).

**C.** **The only disputed element is the identity of the person who inflicted the injuries to Erica, and ample evidence supports the finding that Clifford Nelson did it.**

.

The only deficiency of evidence raised on appeal is the element of who caused Erica's injuries: "If no account is given to Erica's recorded statement, there is no overriding evidence of guilt of Clifford of the assault as charged in the information." Appellant's brief at 9.

The fact finder alone determines the credibility of witnesses as well as the weight to be attached to their testimony. *Jackson,* 443 U.S. at 319. When the record supports conflicting inferences, the fact finder is presumed to have resolved the conflicts in favor of the verdict, and such a resolution is accorded deference by the appellate courts. *Id.*

"[W]hen there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), appellate courts should defer to that view of the evidence chosen by the fact-finder." *Simmons v. State,* 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

21

The hypothetically correct jury charge in this case would have several elements:

1. Clifford Nelson
2. intentionally, knowingly, or recklessly
3. caused bodily injury
4. to Erica Minifield
5. Nelson and Erica had children together.

In this appeal, only the first element listed above is contested. The following is a list of evidence that Clifford Nelson is the person who caused the injuries to Erica:

Jason Barnes, the Longview paramedic who responded to the call for assistance for Erica, testified she told him that her assailant, (her "baby daddy") had used his fist and a stick similar to a walking stick. 2 RR 61-62. When she made those claims, she was conscious and communicating and stable. 2 RR 66. Defense counsel's objection to hearsay was overruled because Erica's statement to the doctor was made for and is reasonably pertinent to--medical diagnosis or treatment, and describes medical history; past or present symptoms or sensations; their inception; or their general cause. 2 RR 64-65; Tex. R. Evid. 803.

Dr. Taylor, emergency room doctor, testified that Erica told him that Clifford Nelson had caused her injuries by hitting her with a stick. 2 RR 33. Defense counsel's objection to hearsay was overruled because Erica's statement was made for medical diagnosis or treatment. 2 RR 33; Tex. R. Evid. 803.

22

Erica's friend, Rhonda Daniels Lilly (who prefers just Daniels) had trouble recalling details of the night the injuries occurred and her subsequent phone call with police. 2 RR 77. She also failed to recall a next-day conversation with Erica. 2 RR 77. She did not recall telling police that Erica had Daniels who did it to her. 2 RR 77. She had to have her memory refreshed by hearing (outside the presence of the judge) a recording of her telephone conversation with the police. 2 RR 77-79. After hearing it, she acknowledged telling the police that Erica had named Clifford Nelson as her attacker. 2 RR 80. She denied lying to police about Erica's having named Nelson. 2 RR 84.

The above three persons testified that Erica had told each of them, in separate conversations, that Clifford Nelson, her children's father, had caused the injuries. The judge overruled hearsay objections each time one was made with these witnesses. The appellant's brief does not challenge the admissibility of these statements. Even without the police video of her statement in which Erica named Nelson as her attacker, evidence from three other witnesses was before the court that Erica had previously named Nelson as her attacker. The judge was free to believe these witnesses and disbelieve Erica's testimony that she did not know or recall the identity of her attacker.

The State requests that this Court defer to the judge's decision as to credibility and weight to be given to the witnesses' testimony, as well as to the

judge's resolution of conflicting pieces of evidence. Even without the police video of the hospital interview with Erica, ample evidence proved Nelson was guilty of the assault-family violence. She named him as her attacker to three other people.

## CONCLUSION AND PRAYER

In conclusion, Nelson's conviction should be affirmed. Erica's recorded statement to police was admissible either as a statement to aid officers in responding to an ongoing emergency, as a present sense impression or to impeach her testimony at trial which the State knew would contradict the recorded statement. If the judge committed error by admitting it before the declarant testified, it was harmless error, because there was no jury to be confused by the error of which came in first. Erica's failure to recall who attacked her was called into serious question by medical personnel and her friend. There was ample evidence from which a reasonable fact finder could find, beyond a reasonable doubt, that Clifford Nelson struck Erica Minifield with a stick and caused her bodily injury. The point of error should be rejected.

24

For the foregoing reasons, the State prays that the judgment of the Trial Court be affirmed.

Respectfully Submitted,

/s/ *Zan Colson Brown*

Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
101 East Methvin St., Suite 333
Longview, TX  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing has been forwarded to counsel of record by electronic service to:

Ebb Mobley
P.O. Box 2309
Longview, Texas 75606
Ebbmob@aol.com


this 5th day of June, 2015.

/s/ *Zan Colson Brown*

Zan Colson Brown
Assistant District Attorney

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with Texas Rules of Appellate Procedure, Rule 9 (2012) regarding length of documents, in that exclusive of caption, identify of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, it consists of 4771 words.

/s/ *Zan Colson Brown*
Zan Colson Brown
Assistant Criminal District Attorney