

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0590-13

### THE STATE OF TEXAS

### v.

### KIMBERLY CRYSTAL STORY, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### GUADALUPE COUNTY

MEYERS, J., delivered the opinion of the Court, in which JOHNSON, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., filed a dissenting opinion in which PRICE, J., joined. WOMACK, J., concurred.

### O P I N I O N

Appellee, Kimberly Story, was charged with forgery after police found forged checks in her car. *See* TEX. PENAL CODE § 32.21 (2014). The trial court, however, granted her motion to suppress the checks that were recovered from her vehicle, which was searched during the arrest of Appellee and her boyfriend, James Kuykendall, for unrelated offenses. The trial court determined that Appellee was arrested without probable cause and that the

search of her vehicle and seizure of the evidence found there were the result of a trespass by the officer. The court of appeals affirmed the ruling of the trial court, finding no abuse of discretion in the court's conclusion that Appellee's arrest was unlawful and the evidence inadmissible. *State v. Story*, No. 04-12-00235-CR, 2013 Tex. App. LEXIS 4769, at *10 (Tex. App.–San Antonio April 17, 2013) (mem. op., not designated for publication). We agree with the court of appeals that the trial court did not abuse its discretion and, therefore, affirm its judgment.

## BACKGROUND

Sheriff's deputies responded to an anonymous report of a vehicle chasing and possibly attempting to run over a man in a field. When the officers arrived, they found an SUV parked in the field, but no one else was present. The deputies found James Kuykendall walking alone on a nearby street and, after speaking with him, learned that he was the man described in the report. Because Kuykendall's story was vague, they transported him back to the scene where the SUV was parked to try to get more information from him. Appellee then appeared, and the couple told the officers that they had both been in the car when they had an argument and Kuykendall got out. They explained that Appellee then followed Kuykendall in the car, trying to convince him to get back in. Both agreed that "nothing had happened, that it was just an argument." However, Appellee was arrested for misdemeanor assault.

Prior to Appellee's arrest, a deputy was walking by her vehicle and saw, in plain

view, what he thought to be marijuana sitting on the floor by the passenger seat. Appellee was then arrested for the assault and the officers searched her vehicle. The officers collected the marijuana and arrested Kuykendall because he admitted that it was his. During the search of the entire passenger compartment of Appellee's vehicle, the deputies also found several checks laid out in the back seat. All of the checks were from the Youth Livestock Show and were either made out to Appellee or blank. Appellee's brother, who had come down to the scene at some point, confirmed for the officers that Appellee was not supposed to have the checks. The deputies seized the checks, and Appellee was later indicted for forgery.

Appellee filed a motion to suppress the checks, which the trial court granted. The trial court concluded that there was no probable cause to arrest Appellee for assault, that the deputy had no reason to look into the vehicle, and that the deputy trespassed when he went into the field and looked into the vehicle's windows.[1] Therefore, the court found that

---

[1] The following findings of fact accompanied the trial court's conclusions of law: (1) on November 7, 2010, the Sheriff's Department received an anonymous call that "there was a vehicle in the field that was chasing a male as if they were trying to run him over;" (2) when deputies arrived at the scene no one was present; (3) the possible male (Kuykendall) was located elsewhere and brought back to the scene by a deputy; (4) the defendant (Story) was at the scene. How or when she came to be there is unknown; (5) Kuykendall and defendant told the deputies that nothing had happened and they were only having some kind of argument; (6) There was no emergency, no one was in danger. The community did not need any care taking; (7) Kuykendall and defendant were arguing because the deputy had brought Kuykendall back to the scene; (8) a deputy went into the field where the Explorer was located and looked inside the vehicle; (9) the deputy did not ask anyone for permission to enter the field and look into the vehicle; (10) the deputy had no reason to look into the vehicle; (11) Defendant was in custody for assault family violence and Kuykendall was 15-20 feet from the vehicle; (12) deputies entered the vehicle and seized suspected marijuana; (13) Kuykendall was arrested and placed in a patrol car after he admitted the marijuana was his; (14) after entering the vehicle to seize the marijuana, the deputy

the seizure of the marijuana was illegal, as was the resulting seizure of the checks.

## COURT OF APPEALS

The court of appeals held that "the evidence supports the conclusion that the checks were obtained by exploiting Story's unlawful arrest" and, therefore, their suppression by the trial court was proper. *Story*, 2013 Tex. App. LEXIS 4769, at *10. It concluded that the evidence supported the trial court's conclusion that Appellee's arrest for misdemeanor assault was unlawful because the report from the anonymous caller was not sufficient to establish probable cause and both parties explained they were only having an argument. *Id*. at *9. Further, her arrest was not made under a circumstance that authorizes a warrantless arrest, such as committing an offense in the presence of an officer. *Id*. The State did not attempt to argue that Appellee's arrest was lawful, but instead claimed that the checks were seized subject to Kuykendall's arrest, rather than Appellee's. The court of appeals found this "unconvincing." *Id*. Determining that the trial court's suppression ruling was reasonably supported by the record, the court of appeals affirmed the motion to suppress. *Id*. at *9-10.

---

searched the passenger area for any other contraband; (15) the deputy sees the checks in the backseat area of the vehicle. The checks are not contraband; (16) "upon further inspection of the checks" the deputy noticed the payee on the checks was defendant; (17) no photographs of the back seat area were taken even though a camera was available. Photographs would have verified what the deputy saw in the back seat; (18) the deputy seized the checks as evidence of a crime without a search warrant issued by a judge only on his "suspicion that the checks were fraudulently written out and stolen possibly;" (19) the defendant owned the vehicle; (20) only after further investigation was probable cause established that defendant had committed the offense of a forgery.

## ARGUMENTS OF THE PARTIES

The State asserts that the court of appeals erred in holding that the seizure of the checks following a warrantless search of Appellee's SUV was tainted by her unlawful arrest as fruit of the poisonous tree. It argues that the checks are admissible against Appellee because they were lawfully seized pursuant to Kuykendall's arrest. Further, the State contends that the deputies' entry onto the field was lawful under the "open fields" doctrine and that the marijuana was in plain sight when the officer looked through the car's window. Therefore, Kuykendall was lawfully arrested after taking responsibility for the drugs, and there was probable cause to seize the marijuana. The State argues that the checks were in plain view in the back seat and that their incriminating character was immediately apparent.

Alternatively, the State contends that remand to the court of appeals would be appropriate because the court of appeals did not consider the admissibility of the checks under the theory that the search was valid pursuant to Kuykendall's arrest. Appellee counters that the testimony from one of the officers present that night made clear that the search was conducted pursuant to Appellee's arrest. Further, Appellee points out that the court of appeals did directly address the State's theory and found it unconvincing.

Appellee also argues that, because it was not brought up on direct appeal, the State cannot now raise a challenge to the trial court's conclusion that the deputy trespassed prior to the search of Appellee's vehicle. Regardless, however, Appellee asserts that the

State misunderstands the open-fields doctrine, because an intrusion on an open field by law enforcement is considered trespass. *See Oliver v. United States*, 466 U.S. 170, 177 (1984). The trial court was correct in concluding that a trespass occurred, that the deputy had no reason to look inside the vehicle, and that the search of the vehicle was illegal.

## STANDARD OF REVIEW

We will review a lower court's ruling on the motion to suppress for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). The record will be viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *Id*.; *Montgomery v. State*, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1991). We will uphold the judgment if it is correct on some theory of law applicable to the case, even if the trial judge made the judgment for a wrong reason. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Further, a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it. *Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002).  Because the trial court is the sole trier of fact, we will give almost total deference to the its determination of historical facts. *Dixon*, 206 S.W.3d at 590. The trial court's application of the law to those facts, however, is reviewed *de novo*. *Id*.

## ANALYSIS

In its first issue, the State argues that Appellee's vehicle was searched pursuant to

Kuykendall's arrest and that a step-by-step application of the law to the facts shows that the trial court erred in rejecting this claim. The first step in the State's proposed analysis is finding the deputies' entry into the unoccupied field lawful under the open-field doctrine. From this lawful entry, the State says, the officers developed probable cause to arrest Kuykendall and, subsequently, the probable cause for the search of the rest of the vehicle.

First, as discussed, an appealing party may not present a theory for the first time on appeal. *Hailey*, 87 S.W.3d at 122. Here, the State never presented any evidence concerning the open-field doctrine or even raised the doctrine as part of its argument at either the trial court or the court of appeals. Therefore, while the State's theory might be valid to justify the search, it needed to be raised in the trial court in order for us to consider it. Despite this requirement, during the suppression hearing, the State never asserted that the area where the vehicle was located was an "open field" in the legal sense, nor did the State provide any evidence to support such a determination.

The State also asserts that, contrary to the trial judge's conclusion, there is no evidence that the officers were trespassing because there is no evidence that the unknown owner prohibited entry. There is no evidence on this issue, however, because the State did not present any. Because the State had the burden of proving that the location was an open field, the lack of evidence undermines the State's argument rather than supports it. This open-field claim should have been raised at the suppression hearing in order to avoid

what, due to the lack of evidence, would only be speculation on our part due to the lack of evidence. Because the trial court never had the opportunity to rule upon it and Appellee never had a chance to rebut it, the State cannot now rely on its open field theory. Therefore, the State's theory that the checks were properly seized pursuant to Kuykendall's arrest is missing its essential first link of the deputies' entry into the field being lawful.

Further, one of the officers who testified at the suppression hearing stated that the search of the vehicle was conducted pursuant to Appellee's arrest, and no officers testified otherwise. Therefore, the court of appeals did not err in rejecting the State's theory that the search occurred pursuant to Kuykendall's arrest.

The record also supports the trial court's conclusion that Appellee's arrest was unlawful for a lack of probable cause, which is required in order for an officer to make an arrest without a warrant. An officer has probable cause when he has knowledge of facts that would lead a reasonable person to believe that the suspect has committed a crime or will soon do so. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008). Only when the officer has probable cause to arrest the suspect may the officer conduct a warrantless search of the passenger compartment of the suspect's vehicle as a search incident to the arrest. *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999). Any evidence that is obtained directly pursuant to an unlawful arrest, however, cannot be used unless the State can show that the means by which it was obtained are "sufficiently distinguishable"

from the taint of the original unlawful search. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). Further, an anonymous call, standing alone, cannot serve to supply probable cause for a warrantless search or arrest. *Rojas v. State*, 797 S.W.2d 41, 43 (Tex. Crim. App. 1990). There must be additional facts or circumstances that support an officer's finding of probable cause. *Amores v. State*, 816 S.W.2d 407, 416 (Tex. Crim. App. 1991).

In this case, both of the involved parties indicated that they were having an argument and that Appellee was simply driving beside Kuykendall in her car. Without additional facts and circumstances indicating that Appellee had committed or was committing an offense, the anonymous call could not serve as the basis for the probable cause required for her arrest. Therefore, viewing the record in the light most favorable to the trial court's ruling, the conclusion that Appellee's arrest was made without probable cause is supported by the evidence. Because it was not error to find Appellee's arrest unlawful, it was similarly reasonable for the trial court to conclude that any evidence found pursuant to that arrest was not admissible. We conclude, therefore, that the trial court did not abuse its discretion in suppressing the checks and the court of appeals did not err in affirming the trial court's ruling.

Alternatively, the State argues that remand is appropriate because the court of appeals did not analyze the argument that the checks were lawfully seized pursuant to Kuykendall's arrest. The court of appeals, however, did directly deal with the issue,

stating,"Instead of addressing the matter of Story's unlawful arrest, the State argues the deputies obtained the checks lawfully in a search incident to Kuykendall's arrest. We find this argument unconvincing. The evidence supports the conclusion that the checks were obtained by exploiting Story's unlawful arrest." *Story*, 2013 Tex. App. LEXIS 4769, at *10. The court of appeals explained, albeit briefly, that it is rejecting the State's argument because it is contrary to the evidence. Considering that the evidence presented at the suppression hearing directly indicated that the search was made pursuant to Appellee's arrest, not Kuykendall's, we find the court of appeals' explanation to be satisfactory and that remand of this case for the issue to be reconsidered is not the appropriate disposition.

## CONCLUSION

The record, viewed in the light most favorable to the trial judge's ruling, supports the conclusion that Appellee's arrest was unlawful, as was the subsequent search of her vehicle incident to that arrest. The trial court did not abuse its discretion, and its ruling was not arbitrary or unreasonable. Therefore, we affirm the court of appeals's judgment that upheld the trial court's ruling to suppress the checks.


Delivered: October 15, 2014

Publish