**Affirmed and Memorandum Opinion filed August 28, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00665-CR

---

### DEBORAH MARIE FALCO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 412th District Court
Brazoria County, Texas
Trial Court Cause No. 75551-CR**

---

## M E M O R A N D U M   O P I N I O N

Appellant Deborah Marie Falco appeals the denial of her conviction for aggravated kidnapping on the ground that the trial court erred in failing to suppress her post-arrest statement to a police detective. We affirm.

### I. BACKGROUND

On January 10, 2015 appellant's house was under police surveillance in connection with a methamphetamine investigation. Sergeant Kristi Carlson testified

that she had seen a black Ford Ranger parked in front of appellant's house that night. The truck's interior light was on and Carlson saw a person inside the vehicle, so she parked down the street and observed the truck through night-vision goggles. Carlson informed Corporal Skye Wingo when the truck left the area. Carlson attempted to follow the truck, but lost it in the dark. Carlson returned to surveil the house and saw people leave the house and get into a car, then one of the people went back into the house. When the car—a rented Chevrolet Cruze—left the house, Wingo followed it, then pulled the vehicle over. Carlson pulled over behind Wingo and approached the vehicle as well.

Wingo did not recognize the driver, Jimmy Joe Garcia, but did recognize the passenger Karri Scott. Scott had a bandana around her neck and her feet were resting on a safe. She was pale, and when Wingo asked Scott her name, she did not look toward Wingo but answered him with her head down, her voice slurred. Wingo had Garcia step out of the car and asked Carlson to watch Garcia while Wingo spoke to Scott. After Carlson saw Garcia swallow a bulge in his mouth, the officers placed him the back of the patrol car, and returned to Scott.

Wingo knocked on the car window and when Scott didn't respond, Wingo opened the car door and told her to step out of the car. She said she could not, and when Wingo asked why, Scott told him she was tied. Carlson saw that a jacket had been placed backwards across Scott's chest, and when they removed the jacket, they saw that Scott's hands were tied behind her back. Carlson cut the tie from Scott's hands, took Scott to Carlson's patrol car, and called an ambulance.

Scott told Carlson that Garcia had told her that if he was pulled over, he would kill Scott. Scott related that she had gone to appellant's house where she and appellant had gotten into an argument. Appellant and Garcia took Scott's truck, which was the black Ford Ranger Carlson had seen earlier, and appellant made her

swallow at least six pills before putting a gag into her mouth and securing a bandana over the gag. Scott stated that she was then forced into the car at gunpoint, and that appellant said if anyone found out, then she, appellant, would burn Scott's house down with Scott's fiancé inside it.

By this time in Scott's narrative, the ambulance had arrived. EMS transported Scott to the hospital, where she was intubated. Scott remained in the hospital for a week, but does not remember it.

While Carlson spoke with Scott, the car was searched and found to contain, among other things, a loaded .38 caliber revolver, an expandable baton, and mail addressed to appellant. Four days after the kidnapping, Scott's black Ford Ranger was found. The seat had been pulled farther forward than normal and the vehicle had been cleaned.

Appellant was arrested and charged by indictment. While in custody, appellant asked to speak to Detective Clark McGrael, the investigator assigned to the case. The videotape of that meeting shows that McGrael read appellant her rights and asked if she wished to waive those rights and to speak with him and make a written statement. Appellant answered, "Yes, to a certain extent." McGrael confirmed that appellant was represented by counsel, but appellant neither invoked her right to have counsel present nor waited for McGrael to ask her a question. She instead gave her version of events, stating that she had confronted Scott about stealing from her, but that it had been Scott's idea to sign her truck over to appellant. According to appellant, Scott had gagged herself and invited Garcia to tie her up. The trial court denied appellant's motion to suppress her statement to McGrael.

At trial, Scott testified that she and appellant had been friends, but on this night, appellant had accused her of stealing money. According to Scott, appellant said that Scott was going to sign her truck over to appellant. Appellant then handed

3

Garcia a .38 revolver and took out a baton. Feeling threatened, Scott signed the paper appellant had presented to her. Appellant then took Scott's phone and keys and gave the phone to Garcia. Scott heard appellant tell Garcia that she, appellant, was going to get rid of the truck, then left. When appellant returned, appellant and Garcia discussed how many amitriptyline to give Scott and decided on six. Appellant held Scott's face upward and poured water in her mouth, then dropped the pills in. Garcia then tied Scott's hands behind her back, and appellant balled up a bandana and stuffed it in Scott's mouth. Appellant placed a second bandana between Scott's teeth and around the back of her head, and Garcia tied it. Appellant said that Garcia was going to drop Scott off, then meet back up with appellant. Scott understood that she would not be "dropped off" alive.

Corporal Wingo and Sergeant Carlson also testified at trial, as did Detective McGrael. The jury additionally viewed the videotapes of the traffic stop and of appellant's statement to McGrael.

The jury found appellant guilty of aggravated kidnapping, and after finding that appellant had a prior felony conviction, the jury assessed punishment at thirty years' confinement plus a $10,000 fine.

In a single issue, appellant argues that the trial court erred in denying the motion to suppress her statement.

## II. STANDARD OF REVIEW

We review the denial of a motion to suppress for abuse of discretion. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). In doing so, we view the record in the light most favorable to the trial court's ruling, reversing only if the ruling is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 20104). We afford almost complete

4

deference to the trial court's determination of historical facts, especially when based on credibility and demeanor. *Furr*, 499 S.W.3d at 877. We review de novo the application of law to those facts that do not turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We will uphold the ruling if it is correct on any theory of law applicable to the case, but we will not reverse based on a legal theory not presented to the trial court. *Story*, 445 S.W.3d at 732.

### III. VALIDITY OF WAIVER

Appellant contends that the statement at issue was obtained in violation of her Fifth Amendment and Sixth Amendment rights. She contends that she did not freely and voluntarily waive her rights because she stated that she waived her rights "to a certain extent." She further maintains that the statement was obtained in violation of her Sixth Amendment right to counsel because McGrael did not discontinue the interrogation when appellant stated that she was represented by counsel.

It previously was the law that if an accused was represented by counsel, the police could not initiate interrogation without notice to, and the presence of, defense counsel. *Michigan v. Jackson*, 475 U.S. 625, 636 (1986); *Upton v. State*, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993) (citing *Holloway v. State*, 780 S.W.2d 787, 795 (Tex. Crim. App. 1989)). That law has since been expressly overruled. *See Montejo v. Louisiana*, 556 U.S. 778, 797 (2009); *Pecina v. State*, 361 S.W.3d 68, 78 (Tex. Crim. App. 2012).

Under the current state of the law, an accused who wants defense counsel present during custodial interrogation must affirmatively invoke that right. *See Montejo*, 556 U.S. at 794–95; *Pecina*, 361 S.W.3d at 78. Appellant acknowledges this. She further acknowledges that the more recent rule appears to apply even when the interrogating officer knows that the accused is represented by counsel. She

5

nevertheless suggests that whether the officer knows the accused is represented by counsel should be a factor in determining whether the accused's waiver of the right to have counsel present was made knowingly, voluntarily, and intelligently. Appellant neither contends that the law currently requires the interrogating officer's knowledge to be treated as a factor to be considered, nor does she explain why it should do so. She also did not argue in in the trial court for the change in the law that she now suggests. We decline the invitation to create such a requirement.

The record before us readily supports the trial court's ruling. It is undisputed that it was appellant herself who asked to speak to McGrael and that before doing so, McGrael read appellant her rights in accordance with the standards of *Miranda v. Arizona*[1] and Texas Code of Criminal Procedure art. 38.22. When McGrael asked appellant, "Do you understand these rights I have read you?" she responded "Yes, I do," and nodded. McGrael then asked, "Do you knowingly, intelligently, and voluntarily waive these rights I have read you and do you desire to talk to me and give me a written statement?" Appellant nodded and said, "Yes, I do to a certain extent." McGrael then added, "While I was reading you those, you mentioned you have your attorney." Appellant answered, "Yes, David Cunningham. I think you spoke to him." McGrael remained silent, but rather than invoking her right to have counsel present, appellant said, "Let me—there's just so much stuff that proves me innocent of this. I would like to tell you what this is about." She then began to tell her version of events. When she paused and asked McGrael, "what do you want to know," he shook his head and said, "you're telling me," and appellant continued with her statement. At no point did she invoke her right to counsel or ask to terminate the interview.

---

[1] 384 U.S. 436 (1999).

On this record, there is no basis on which to conclude that the trial court abused its discretion in denying appellant's motion to suppress her videotaped statement.

We overrule appellant's sole issue.

## IV. CONCLUSION

Having overruled the only issue presented, we affirm the trial court's judgment.

/s/    Tracy Christopher
Justice

Panel consists of Justices Boyce, Christopher, and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).