**Opinion issued May 2, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-18-00679-CR**
**NO. 01-18-00680-CR**
**NO. 01-18-00681-CR**

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**JEROLD JERMAINE GRIFFIN, Appellee**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case Nos. 17-DCR-078992, 18-DCR-080908, 16-DCR-075232B**

---

## MEMORANDUM OPINION

After being charged by three indictments with felony drug possession in a

drug-free zone, Appellee Jerold Griffin filed a motion to suppress in all three cases.

After an evidentiary hearing, the trial court granted the motions to suppress, and the State appeals. We affirm the trial court's ruling.

## Background

The evidence at the suppression hearing consisted of the testimony of Sugar Land police officers Joshua Young and Matt Shockey and videos from their body cameras of the incident. The trial court made the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. Officer Joshua Young, a Sugar Land Police Department patrol officer on night shift patrol, at approximately 11:30 p.m., while patrolling the Mayfield subdivision on September 23, 2016, noticed someone sitting on a bench under the pavilion at Mayfield Park. Officer Matt Shockey and Officer Jones of the Sugar Land Police Department arrived at approximately the same time as Officer Young. Officer Shockey was assigned to the Sugar Land Police department training division as a range master but was working night patrol this date. Officer Young, a less experienced officer, was the first officer arriving and was designated as the lead officer.

2. The Mayfield subdivision is a known high crime area.

3. Griffin approached Officer Young's vehicle as officer Young drove up to the pavilion area. Griffin's demeanor was calm and he began talking to officer Young.

4. The Park hours are from dawn to dusk and are posted at the park entrance. A sign may be seen beside the pavilion.

5. Officer Young advised Griffin of the park hours and told Griffin that he was in violation of the park hours. Officer Young observed a large wad of cash in Griffin's pocket and was unable to

2

determine the denomination of the cash bills. Officer Young did not observe anything else in Griffin's pockets.

6.    There were no other individuals at the park.

7.    Officer Young observed open containers of alcohol on the bench in the pavilion and Griffin admitted drinking out of the containers.

8.    Officers Jones, Young and Shockey escorted Griffin to the pavilion. Griffin gave identifying information to Officer Young when asked. Young left Griffin at the bench in the pavilion to check on outstanding warrants but found no outstanding warrants on Griffin.

9.    Griffin told the officers that he was homeless. He indicated that he had lived in the house across the street in the subdivision. Griffin said he worked at TXU and had been paid.

10.    Officer Shockey indicated to Griffin that if he was not causing trouble and not smoking weed[,] the officers were cool and that they are not into selective enforcement and not there to split hairs. Officer Young asked Griffin if he had anything illegal on him and Griffin said no.

11.    Officer Young asked Griffin for consent to search him and no consent was given.

12.    Griffin was told to stand up by Officer Young. Officer Young then told him he was going to be arrested for violation of the city ordinance, a fine only offense. While Griffin was standing Officer Young put his hands on Griffin and turned him around to place Griffin's arms behind him. This was the only show of force by anyone at the time.

13.    Griffin ran at this point.

14.    The officers chased Griffin and put him on the ground where a struggle occurred. All officers struggled with Griffin with Officer Young attempting to taser Griffin and subsequently putting his weapon to Griffin's head.

3

15.     After a search of Griffin's pockets the officers found cocaine, ecstasy and Xanax.

16.     Griffin was arrested for possession of illegal narcotics and resisting arrest in a drug free zone.

## CONCLUSIONS OF LAW

1.     Officer Young observed Griffin in Mayfield Park after dark when city parks are closed. There was no one else at the park except Griffin. The Sugar Land City Ordinances provide that city parks are open from sunrise to sunset and notice of this rule is posted in city parks.

2.     Officer Young and officers Shockey and Jones observed open containers of alcoholic beverages on the park bench where they found Griffin. The consumption or possession of open containers of alcohol in city parks is prohibited. Violation of this ordinance may result in a fine up to $500.00.

3.     Griffin approached Young upon Young's arrival and was calm and accompanied Young to the park bench. Young observed a wad of cash in Griffin's pocket but did not observe anything else in Griffin's pockets. Griffin explained that he had cashed his TXU work check and that was the cash in his pocket. Young explained to Griffin that he was in violation of the City of Sugar Land ordinances regarding being in the park after closing hours and in possession of alcoholic beverages in the park without permission. Young told Griffin that he was returning to his police vehicle to check for outstanding warrants.

4.     Shockey and Jones stayed with Griffin at the park bench and questioned Griffin about his reasons for being in the park. Griffin explained that he previously lived in the neighborhood but was homeless. Shockey explained options for housing and indicated to Griffin that if he was not smoking weed the officers were cool.

5.     Young returned to the park bench and said he found no outstanding warrants. He then began to question Griffin about whether he had anything in his pockets and asked for consent to search Griffin.

4

Griffin denied having anything in his pockets and denied consent to search.

6. Griffin violated the city ordinances regarding being in the park after closing [h]ours and in possession of alcoholic beverages and Young was authorized to write Griffin a citation and remove him from the park.

7. The officers under the U. S. Fourth Amendment and Art. 1, § 9, Texas Constitution had seized Griffin and he was not free to leave.

8. There were no exigent circumstances existing after the officers determined there was a reasonable explanation for the cash in Griffin's pockets, they had determined that the reason for the stop was for the violation of the park hours and alcohol consumption in the park and Griffin was cooperating with the officers.

9. There were no articulable grounds presented by the officers for the request to search Griffin's pockets as no bulges were observed, no evidence of weapons and there was no intent to arrest Griffin.

10. The officers were there for the ordinance violations and had offered Griffin assistance to find housing with no focus on other than the ordinance violations.

11. There was no reasonable suspicion nor probable cause for Young to perform a Terry frisk of Griffin nor probable cause to arrest Griffin for any offense.

This Court determines that all evidence seized should be suppressed.

## Analysis

In its sole issue, the State contends that the trial court erred as a matter of law in granting the motions to suppress because the evidence was obtained in a search incident to arrest.

**Standard of Review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Id.* at 190. We give deference to the trial court's factual determinations because the trial court is the sole trier of fact and judge of witness credibility and the weight to be given their testimony. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Our deferential review also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review de novo purely legal questions, as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

When the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law

6

applicable to the case. *Lerma*, 543 S.W.3d at 190; *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

**Search Incident to Arrest**

The State argues that Officer Young's attempted search of Griffin's pant pockets was a lawful search incident to arrest.

"If an officer has probable cause to arrest, a search incident to arrest is valid if it is conducted before a formal arrest—at least if it is immediately before the arrest." *State v. Sanchez*, 538 S.W.3d 545, 550 (Tex. Crim. App. 2017). This argument is belied by the evidence—particularly the body camera video—which reflects that the officers were not going to arrest Griffin and that Officer Young was not attempting to search Griffin in the context of arresting him.

Officer Young testified that, after asking Griffin several times for consent to search his pockets: "At that point, I told him to stand up, put his hands behind his back, that I was going to arrest him for the city ordinance violations." This testimony is contradicted by the body camera video, which shows that, after confirming that Griffin had no outstanding warrants, Officer Young stated to Griffin: "As long as you're not doing anything illegal, I'm cool with that. . . . as long as you're not causing any kind of ruckus, or you're not smoking weed out here."

7

Officer Shockey, one of the other two officers, then discussed with Griffin that the park closed at dark by city ordinance, that they try not to do selective enforcement, and that they understood that, with Griffin being homeless, he had to do what he had to do to get by. They then discussed Griffin's employment situation and that there were programs and assistance available to help him with his homeless situation and lack of a vehicle, and Officer Shockey concluded by telling Griffin:

> Whatever you do, man, just don't get too drunk out here with that vodka and that beer and then you start getting stupid when you're all drunk. . . . You're not really supposed to drink in the parks, but we're not out here trying to split hairs either. . . . Just be smart about it, like Officer Young said, we're just making sure people aren't out here causing a ruckus or doing anything wrong. All right, man?

Griffin replied, "Yes, sir."[1]

Officer Shockey and the third officer then turned as if to start walking away, but Officer Young then addressed Griffin, stating: "Before we leave you, man, like I said, I don't want anything illegal going on, man. So, you don't have anything illegal on you? No drugs, weapons, something like that, man?" Griffin replied, "No, sir," shaking his head in the negative in response to those questions.

Officer Young then immediately asked, "Can I check just to make sure, man?" Griffin calmly replied, "No, sir." Officer Young said, "Huh?" Griffin

---

[1] In response to a question from the trial judge, Officer Shockey testified that the normal course of action for persons in the park "after hours" is, "more times than not, it's just a warning or we write a ticket."

replied, "No, I'm saying I don't have nothing." Officer Young then asked, "You got nothing illegal on you?" Griffin replied, "No, sir."

Officer Young continued, "Okay, I'm asking, can I check to make sure you don't have anything illegal on you? If you don't, I'll leave you here, brother, to do your thing." Griffin continued to deny having anything illegal and to refuse Officer Young's request to search. Griffin then stood up and turned his back to Officer Young, who said, "Put your hands back here." As Griffin began to put his hands behind his back, he started running but was quickly apprehended.

In short, nothing in the video suggests that Officer Young intended to arrest Griffin for a city ordinance violation or was going to perform a search incident to such an impending arrest.[2] In fact, both officers' statements in the video reflect the opposite—that as long as Griffin was not smoking "weed" or causing a ruckus, they were going to let him stay at the park. And Officer Young then added that he would let Griffin stay in the park and "do his thing" if the officer could check whether Griffin had anything illegal on his person. The record does not support the State's argument that Officer Young's attempted search was incident to an arrest.[3]

---

[2]  After reviewing the videos and Officer Young's testimony, it is clear that the trial court's Finding of Fact No. 12 is a recitation of Officer Young's testimony rather than a recitation of the colloquy on the video. The trial court's Conclusion of Law No. 9 ("there was not intent to arrest Griffin") confirms this determination.

[3]  Griffin was not indicted for the offense of evading arrest or resisting arrest.

9

## Conclusion

The trial court did not err or abuse its discretion in granting Griffin's motions to suppress. We overrule the State's sole issue and affirm the orders of the trial court.

Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).