

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00022-CR

Travis Leslie **NORTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR3975
Honorable Frank J. Castro, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: October 19, 2022

AFFIRMED

Travis Leslie Norton brings one issue on appeal, arguing that the trial court erred in failing to suppress the physical evidence obtained pursuant to a warrantless search of his person in violation of the Fourth Amendment. On original submission, we held that Norton had failed to preserve this issue for appeal. *See Norton v. State*, No. 04-18-00022-CR, 2019 WL 572830, at *1 (Tex. App.—San Antonio Feb. 13, 2019). Norton then filed an application for writ of habeas corpus in the county of conviction, and the district clerk forwarded it to the court of criminal appeals. *See Ex parte Norton*, No. WR-92,415-01, 2021 WL 1202422, at *1 (Tex. Crim. App. Mar.

31, 2021). In considering Norton's habeas application, the court of criminal appeals found that due to a clerical error, the complete appellate record had not been forwarded to this court for purposes of Norton's direct appeal, and this court had been "unable to correctly evaluate [Norton]'s sole issue on appeal." *Id*. Therefore, "due to the clerical error and the fact that the Fourth Court of Appeals did not have the complete record on appeal," the court of criminal appeals held that Norton "was deprived of his right to an effective appeal and for that reason," "should be granted an out of time appeal." *Id*. Accordingly, the court of criminal appeals granted relief and returned Norton to the direct appeal process. *Id*. In accordance with the court of criminal appeals' opinion, we withdrew our previous opinion and judgment, and reinstated this appeal on the docket of this court. We now consider Norton's sole issue with the benefit of a complete appellate record.

## BACKGROUND

Because Norton's suppression issue was not relitigated at trial, we consider only the evidence presented at the pretrial suppression hearing. *See Black v. State*, 362 S.W.3d 626, 631 (Tex. Crim. App. 2012). At the suppression hearing, three officers from the Selma Police Department testified: Officer Cory Vanderver, Sergeant Chris Claybrook, and Corporal Arturo Perez. No other evidence was admitted.

Officer Vanderver testified that on the night of August 6, 2015, he was working on special assignment by using "a pinger application to contact a[n] escort through Backpage." According to Officer Vanderver, a "pinger" application is a random phone number, which he then used to "contact an escort in an attempt to get her to bring narcotics" to him. Officer Vanderver testified that he made contact with an escort, Troi Wiggins, and arranged to meet her at a hotel in Selma, Texas, requesting that she bring methamphetamine for him to purchase. When Wiggins arrived at the hotel for the meeting, Officer Vanderver determined that she had an active municipal warrant and placed her under arrest. Wiggins was found to be in possession of methamphetamine.

Sergeant Chris Claybrook testified that on August 6, 2015, he was in uniform and working the night shift. Sergeant Claybrook then testified about the illegal narcotics trafficking investigation he conducted at the hotel in Selma: "We had called an individual from BackPage and asked [her] to bring us a quantity of methamphetamine" to the hotel. Sergeant Claybrook testified he made contact with Wiggins at the hotel, and she was the person who had agreed to bring the undercover officer methamphetamine. Sergeant Claybrook testified methamphetamine was found in Wiggins's possession. The officers confiscated the methamphetamine and arrested Wiggins. Sergeant Claybrook then discussed with Wiggins "[e]ssentially what she was going to be charged with, what had occurred up until that point." He "talked to her about illegal narcotics trafficking, if she knew anybody else who could produce illegal narcotics for [the officers]." Wiggins replied that she could. She said she knew someone who "could bring a larger quantity of illegal narcotics to [them] than what she was found to have in her possession."

Sergeant Claybrook testified that while in his presence, he heard Wiggins make contact with someone on her phone, and that individual agreed to bring an amount of methamphetamine to the hotel. Later, at the designated time, Sergeant Claybrook and Wiggins waited in an interior stairwell of the hotel for the individual to arrive.

At the appointed meeting time, Officer Vanderver was outside toward the front of the hotel when he saw a dark colored pickup truck slowly drive through the parking lot and park near the front entrance of the hotel. One male exited from the passenger seat while the other male exited from the driver's seat. Officer Vanderver identified Norton as the man who exited from the right passenger seat. Officer Vanderver then saw Norton walk inside the front door of the hotel. Officer Vanderver waited a minute and then slowly pulled his patrol car behind the pickup truck. Officer Vanderver approached the man who had exited the driver's seat and told him the front desk had called and said they did not recognize the vehicle.

Sergeant Claybrook testified that when the individual entered the interior stairwell where he and Wiggins were waiting, Sergeant Claybrook ran up a flight of stairs so that he would not be seen by the individual. Sergeant Claybrook saw the individual and Wiggins make contact. At the suppression hearing, Sergeant Claybrook identified the individual meeting Wiggins as Travis Norton. Sergeant Claybrook then saw Norton and Wiggins walk down towards the ground level. Sergeant Claybrook followed them. Norton and Wiggins exited the backstairs door. A short time later, Sergeant Claybrook followed them outside and saw Officer Perez make contact with Norton and Wiggins.

Corporal Arturo Perez testified that on August 6, 2015, he was working the night shift and was in uniform. He was called to the hotel to assist Officer Vanderver in an investigation relating to the illegal sale of narcotics. When he arrived, he was informed that the officers had arrested Wiggins and "a deal was made"—the officers were going to wait for a drug buy to occur between Wiggins and another individual. Corporal Perez was told by Officer Vanderver that "there was a suspect possibly coming out the back of the hotel." Corporal Perez drove his patrol car to the back of the hotel and "saw the previously arrested female [Wiggins] and the defendant Norton in the back coming out of the hotel, and the door shut behind him." Corporal Perez approached Norton and asked what he and the female were doing. Norton replied that "the previously arrested female [Wiggins] [was] his mother and that they [were] staying at the hotel." Corporal Perez asked what room they were staying in and whether they had their keycard to get back into the hotel. Norton dug through his pockets but did not have a keycard. Corporal Perez noticed Norton had "two knives sticking on the outside of his pants facing outward." Corporal Perez asked Norton whether he had any weapons on his person. Norton handed Corporal Perez the knives. Norton said he had lost twenty dollars and was in the parking lot looking for his lost cash. Perez asked Norton for his identification, but Norton "kind of avoided showing [Perez] the ID card and started to walk away

from [Perez]." Corporal Perez testified, "When he got to the edge of the building he kicked off his flip flops and then took off running." Corporal Perez yelled at Norton, "Stop. Police." Corporal Perez called Officer Vanderver and said, "Got one running and we're coming at you." Corporal Perez pursued Norton and was right behind Norton when he saw Officer Vanderver trip Norton at the front of the building.

Officer Vanderver was at the front of the building when he heard Corporal Perez yell over the radio. Officer Vanderver testified that he turned around and saw Norton running towards him with Corporal Perez in pursuit. Officer Vanderver kicked Norton's left leg, causing him to fall to the ground. When Norton attempted to get up, Officer Vanderver kicked his left foot, causing Norton to fall again. When Norton attempted to get up again, Officer Vanderver and Corporal Perez "jumped on top of him." Norton "was fighting," which resulted in the officers using a "dry stun taser." Norton was then placed under arrest and searched. Officers found a black bag with methamphetamine and a scale.

After hearing the testimony presented at the suppression hearing, the trial court stated that it found the officers credible. The trial court denied Norton's motion to suppress. Norton now appeals.

**DISCUSSION**

Norton argues the trial court erred in denying his pretrial motion to suppress because the evidence showed "the officer did not have the requisite knowledge to allow an investigative detention." "Under the Fourth Amendment, a police officer may conduct an investigative detention if the 'reasonable suspicion' standard is satisfied." *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. Crim. App.), *cert. denied*, 142 S. Ct. 589 (2021). "Reasonable suspicion" means "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id*. (citation omitted). That is, "[r]easonable suspicion exists if the officer has specific articulable facts that,

when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity." *Id*. (citation omitted). "The 'reasonable suspicion' standard depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id*. at 385 (citation omitted). "In formulating reasonable suspicion, a police officer can draw on his own experience and specialized training." *Id*. "We review a determination of reasonable suspicion by looking at the totality of the circumstances." *Id*.

Further, we review the trial court's ruling on a motion to suppress for abuse of discretion. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014). Under this standard, we view the record in the light most favorable to the trial court's determination and reverse the trial court's judgment "only if it is arbitrary, unreasonable, or outside the zone of reasonable disagreement." *Id*. We "uphold the judgment if it is correct on some theory of law applicable to the case, even if the trial judge made the judgment for a wrong reason." *Id*. Further, because "the trial court is the sole trier of fact, we will give almost total deference to its determination of historical facts." *Id*. "The trial court's application of the law to those facts, however, is reviewed de novo." *Id*.

Here, Norton argues because the officers did not have reasonable suspicion to detain him for an investigatory detention, his encounter with them was consensual, making him free to leave. Thus, Norton argues he could not be charged with evading the officer and legally searched as an incident to his arrest. In response, the State argues the officers had reasonable suspicion to briefly detain Norton for an investigatory detention and that when he fled, the officers had probable cause to arrest him for evading a lawful detention under section 38.04(a) of the Texas Penal Code.[1]

---

[1] Section 38.04(a) provides that a "person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE § 38.04(a).

Under our appellate standard of viewing the evidence in the light most favorable to the trial court's ruling, the evidence presented at the suppression hearing shows that based on an ongoing narcotics investigation, officers had arranged to buy illegal drugs from Troi Wiggins at a hotel. When she was subsequently arrested and illegal drugs were found in her possession, she made a deal with officers to arrange "a drug buy" at the hotel. After Corporal Perez arrived at the hotel, he "was made aware that the narcotics purchase was to take place with" Wiggins at the back of the hotel. Corporal Perez then saw Wiggins and Norton exit the back of the hotel at the prearranged time. When Corporal Perez approached Wiggins and Norton, Norton claimed that Wiggins was his mother and that he was looking for lost money. He also said he had a hotel room, which Corporal Perez could have reasonably inferred was not true because Norton did not have a keycard to regain entry to the hotel. Corporal Perez testified that at this point Norton was lawfully detained, and he asked Norton for his identification, at which point Norton "kicked off his flip flops" and "took off running." In looking at the evidence in the light most favorable to the trial court's ruling, we conclude that based on the totality of the circumstances, there was some evidence from which the trial court could reasonably conclude Corporal Perez had reasonable suspicion to conduct an investigatory detention of Norton. *See Story*, 445 S.W.3d at 732. Thus, when Norton continued to flee even after Norton identified himself as a police officer and told him to stop, officers had probable cause to arrest Norton for evading a lawful detention pursuant to section 38.04(a) of the Texas Penal Code. Finally, there was evidence to support the trial court's implicit finding that the methamphetamine found on Norton was a lawful search incident to his arrest. *See Price v. State*, No. PD-0722-19, 2020 WL 5754618, at *3 (Tex. Crim. App. Sept. 23, 2020) (explaining that searches of the person of the arrestee, or "of property within the immediate control" of the arrestee, "are always justified under the search incident to arrest exception to the warrant requirement, upon no more justification than the arrest itself") (quoting *United States v. Robinson*, 414 U.S. 218, 235

(1973)). Accordingly, we hold the trial court did not err in denying Norton's pretrial motion to suppress.

## CONCLUSION

Because the trial court did not err in denying Norton's pretrial motion to suppress, we affirm the judgment of the trial court.

Liza A. Rodriguez, Justice

DO NOT PUBLISH