**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00213-CR**
_____

**VICTOR MONIQUE GOYENS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-08-09631-CR**

**MEMORANDUM OPINION**

Appellant was convicted of possession of a controlled substance and sentenced to twenty-five years in the institutional division of the Texas Department of Criminal Justice. Tex. Health & Safety Code Ann. § 481.113(d). Goyens was a passenger in a vehicle that was stopped by a State Trooper, who explained to the car's occupants that he stopped the car for an improperly placed license plate because the car's front license plate was on the dashboard rather than the front bumper of the

1

car. The Trooper approached the car, smelled marijuana coming from inside, and when he subsequently searched the vehicle, the trooper discovered weapons and drugs.

After his arrest and indictment, Goyens filed a motion to suppress a statement that he made to the Trooper during the traffic stop and to suppress the evidence that drugs belonging to Goyens were discovered following Goyens' arrest. After the trial court denied Goyens' motion to suppress, he pleaded "guilty" subject to his right to appeal from the trial court's adverse ruling on his motion to suppress. In one issue on appeal, Goyens argues the trial court erred in denying his motion to suppress. We overrule his sole issue and affirm the trial court's judgment.

## I. Background

Goyens was the sole passenger in a vehicle that was stopped by State Trooper Royce Brown for a traffic stop. Upon approaching the vehicle on the passenger side window, the Trooper asked the driver for his driver's license and insurance. The Trooper told the driver that his license plate could not be on his front windshield but that he would only receive a warning for the violation. He then noticed the odor of marijuana coming from inside the passenger's side of the vehicle. After obtaining the driver's license from the driver, Trooper Brown asked the passenger, Goyens, for his driver's license. Brown asked the driver to exit the car and he questioned the driver outside the car. The Trooper then asked Goyens, who was traveling in the

2

right front seat of the car, to exit the car. In the hearing, Trooper Brown explained he asked the occupants to step out of the car separately "for officer safety[,] because you "[d]on't want multiple subjects on the side of the road that can easily take advantage of you. And to separate them in order to get -- so they don't collaborate their story."

The Trooper proceeded with routine questions about where the driver was going and where was he coming from. The driver and the Trooper then engaged in a conversation on the grassy area behind the driver's vehicle about the best way to move a trailer the driver received as a gift. The driver stated the passenger was his neighbor, and they were originally from Little Rock, Arkansas, but were living in Humble when they were stopped.

When the Trooper asked the driver whether the car was his, the driver said it was. Then Trooper Brown told the driver that he smelled marijuana when he had approached the car and he asked the driver how recently he had smoked marijuana and whether there was any marijuana still in the vehicle. The driver admitted the driver and passenger had smoked marijuana and there was only a little bit in his ashtray. The Trooper asked the driver if he had any paraphernalia or any weapons in the vehicle. The driver responded there was no drug paraphernalia in the car, but that he had a gun in the car by his seat. The Trooper patted the driver down and asked that he wait there in the grassy area.

3

Then, the Trooper approached Goyens and asked him to step out into the grassy area near the front of the car. The Trooper confirmed with Goyens that Goyens and the driver were neighbors, and they were traveling to look at a trailer the driver had recently acquired. He then told Goyens that the driver said they had marijuana and they had recently smoked it. Goyens admitted they had just smoked marijuana. Trooper Brown asked Goyens whether Goyens had any other personal property in the vehicle and, in response, Goyens told the trooper he had nothing other than his wallet in the car. When Trooper Brown asked Goyens whether he'd ever been in trouble, Goyens told him that he had been in trouble for "agg. assault" about 20 years ago. Goyens denied that he had anything illegal on his person.

After questioning the driver and passenger, Trooper Brown searched the driver's side of the car. He found two weapons on that side of the vehicle, and he found marijuana in the car's center console. Trooper Brown then searched the passenger side of the car and found a pistol under the front passenger seat. The Trooper returned to his patrol car, asked dispatch to run a criminal history on the driver and Goyens, and had the serial numbers on the pistols he found in the car checked against the records that police use to see if the weapons were stolen. The Trooper also verified that the car was registered to the driver—not Goyens. The dispatcher reported that the pistol under the passenger seat had been reported as stolen.

The Trooper went back to the driver, who admitted the marijuana in the center console and the two guns on the driver's side were his. After questioning the driver, Trooper Brown approached Goyens and asked him whether the gun under the passenger seat was his. Goyens responded that it was, explaining that he had purchased the gun for his safety from a friend in Houston. The Trooper then returned to the driver and placed the driver under arrest for possession of marijuana and for unlawfully carrying a weapon. Trooper Brown checked with dispatch and the District Attorney's Office and learned that Goyens had a felony criminal conviction within the last five years. Trooper Brown arrested Goyens and charged him with being a felon who had unlawful possession of a firearm.[1]

Trooper Brown took Goyens and the driver to jail. When the Trooper got there with the men handcuffed in his patrol car, he asked both men whether they had anything illegal with them. In response, Goyens disclosed that he had drugs in his underwear. Jail personnel conducted a search at the jail and discovered methylenedioxy methamphetamine (MDMA), a controlled substance, in Goyens' underwear. Goyens was indicted for knowingly possessing with intent to deliver a controlled substance, namely, Methamphetamine, in an amount of four grams or

---

[1] Goyens has previous felony convictions for possession with intent to deliver a controlled substance in 2005 and a prior conviction for murder in 1993. Goyens was on probation for a 2019 felony conviction for possession of a forged instrument.

more but less than 400 grams, by aggregate weight, including adulterants and/or dilutants.

Goyens moved to suppress his statement acknowledging that the gun found under the passenger seat was his gun, contending that he was in custody, but had not been "mirandized," when he told Trooper Brown the gun under the passenger seat was his. Goyens argued that because his arrest is based on his statement the gun was his, that his arrest was illegal and that his subsequent admission that he had drugs in his underwear and subsequent search that led to the discovery of the MDMA was "fruit of the poisonous tree," subject to his motion to suppress. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *State v. Story*, 445 S.W.3d 729, 733 (Tex. Crim. App. 2014). After a hearing on the motion to suppress, the trial court denied Goyens' motion, and Goyens pleaded guilty subject to his right to appeal the trial court's pretrial ruling on his motion to suppress. The trial court sentenced Goyens to twenty-five years in prison, and this appeal ensued.

**A. The Hearing on the Motion to Suppress Goyens' Statement**

Texas Department of Public Safety officer Mackenzie Brown was the sole witness at the hearing the trial court conducted on Goyen's motion to suppress. Brown authenticated the recordings from his body camera and his dashboard camera, both of which were admitted into evidence. He described the traffic stop, the search of the car following the stop, and his brief conversation with Goyens, noting that

6

Goyens was not in custody when Goyens admitted possessing the gun. Because Trooper Brown didn't consider Goyens under arrest, Trooper Brown testified that he did not need to read Goyens the *Miranda* warnings. He did, however, confirm that Goyens was not free to leave the scene of the traffic stop and would have been forcibly prevented from leaving had he tried to do so.

## II. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Torres*, 666 S.W.3d 735, 740 (Tex. Crim. App. 2023); *Lopez v. State*, 610 S.W.3d 487, 494 (Tex. Crim. App. 2020). In conducting our review, "[w]e afford almost total deference to the trial court's findings of historical facts that are reasonably supported by the record and to its resolution of mixed questions that turn on credibility or demeanor[.]" *Lopez,* 610 S.W.3d at 494. "We review de novo a trial court's legal conclusions and its resolution of mixed questions that do not turn on credibility and demeanor." *Id.* As the judge of the credibility of the witnesses in a hearing on a motion to suppress, the trial court is the sole judge of the credibility of the witnesses. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When, as here, the trial court makes findings of fact, we determine whether the evidence when viewed in the light most favorable to the trial court's ruling supports the trial court's findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim.

7

App. 2006); *see also State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will reverse the trial court's ruling on a motion to suppress "only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *Story,* 445 S.W.3d at 732 (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In our review, we afford the party that prevailed on the motion the strongest legitimate view of the evidence and give that party all inferences that may be reasonably drawn from the evidence. *Duran*, 396 S.W.3d at 571. We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law that applies to the case. *Story*, 445 S.W.3d at 732. The party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

### III. Analysis

It is undisputed that Brown did not read Goyens' *Miranda* warnings before Goyens admitted that the gun under the car's passenger seat was his. *See Miranda v. Arizona*, 384 U.S. 436, 476-79 (1966). The dispositive question, then, is whether Goyens was in custody when Brown questioned Goyens about the gun. *Id.* at 545; Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a).

Citing *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012), Goyens contends that because a reasonable person in his position would not have felt free to

8

leave, he was in custody for purposes of *Miranda,* and therefore should have been properly cautioned against self-incrimination. Although we agree that a reasonable person in Goyens' position would not have felt free to leave the scene of the stop, our inquiry does not end there. *See Thompson v. Keohane*, 516 U.S. 99, 113-14 (1995). We examine "the circumstances surrounding the interrogation[]" to determine whether there was "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* at 112 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). Evaluating the surrounding circumstances enables us to determine whether Goyens was "temporarily detained rather than under arrest when [he] made the statement." *Wexler v. State*, 625 S.W.3d 162, 166 (Tex. Crim. App. 2021).

In *Berkemer v. McCarty*, the Supreme Court held that a typical traffic stop "is more analogous to a so-called '*Terry stop*' . . . than to a formal arrest." 468 U.S. 420, 439 (1984) (citing *Terry v.* Ohio, 392 U.S. 1, 30-31 (1968)). It is a brief detention conducted "in order to 'investigate the circumstances that provoke suspicion.'" *Berkemer,* 468 U.S. at 439. "Typically, this means that the officer may ask the detainee a moderate number of questions to . . . try to obtain information confirming or dispelling the officer's suspicions." *Id.* "[P]ersons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Id*. at 440. In this case, for example, the questions that Trooper Brown asked about the ownership of

9

the gun he found under the passenger's seat were important because that gun might have belonged to the driver.

In *Wexler*, the Court of Criminal Appeals rejected the defendant's argument that she was subjected to a custodial interrogation even though she was questioned while detained outside her house in a police car as police executed a search warrant looking for drugs inside the home. 625 S.W.3d at 168. The *Wexler* court drew parallels between being detained during a search and being detained during a traffic stop. *Id.* at 170-71 (citing *Berkemer,* 468 U.S. at 436-40). It observed that like a traffic stop, the challenged detention was not only brief and public, the appellant "was not told that her detention would not be temporary." *Wexler*, 625 S.W.3d at 169-70. Wexler's detention, although it curtailed her freedom of movement, did not reach "the functional equivalent of a formal arrest[.]" *Id*. at 170.

Here, as in *Wexler,* Goyens was briefly detained in daylight, in public, and was never told that his detention was not temporary. *Id.* at 169-70. In fact, Goyens and the driver of the vehicle were told the driver was to be given a warning only for the license plate violation and then they could get on their way. When he was questioned, Goyens' freedom of movement was diminished, but not to the degree associated with a formal arrest, as Goyens and the driver were both standing in a grassy area off the roadside during the relevant portion of the trooper's investigation. Goyens did not own the car and he could see that Trooper Brown's attention was

focused initially on the car's driver. The gun Goyens said belonged to him was found under the seat where Goyens had been sitting before he got out of the car. While the driver told Trooper Brown the men had been smoking marijuana and there were two guns in the car before Trooper Brown found marijuana in the center console and three guns in the car, the discovery of the third gun raised a question about whether the driver also owned the third gun and whether the third gun was registered to him. For that reason, it was reasonable for Trooper Brown to ask Goyens if he owned the gun since the question may fairly be categorized as an attempt "to obtain information confirming or dispelling the officer's suspicions." *Berkemer,* 468 U.S. at 439. It was not, as Goyens argues, a custodial interrogation that required a *Miranda* warning.

In *Wexler*, the Court of Criminal Appeals examined the four factors set out in *Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996), which outlined four general situations that may constitute custody: (1) the suspect is physically deprived of her freedom of action in any significant way; (2) a law enforcement officer tells the suspect that she cannot leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe her freedom of movement has been significantly restricted; or (4) there is probable cause to arrest, and law enforcement officers do not tell the suspect that she is free to leave. *Id.* at 167-68 (internal citation omitted). In the first three situations, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative

11

detention. *Id*. at 168. In Goyens' case, Goyens was told to stand on the side of the road in a grassy area away from traffic with minimal deprivation of freedom. Goyens was not told that he could not leave, he wasn't handcuffed, and he wasn't told he was going to be arrested or charged with a crime. As in *Wexler*, when viewing the evidence from the hearing on the motion to suppress as a whole, the trial court could have reasonably concluded that a reasonable person at that time and place would not have believed that his freedom of movement was restricted to the degree associated with an arrest. *Id.* at 168. We find no abuse of discretion in the trial court's denial of the motion to suppress. There was no unreasonable seizure of the drugs subsequently found on Goyens' person upon entry into the jail as it was a lawful search incident to arrest. *See Price v. State*, 662 S.W.3d 428, 435 (Tex. Crim. App. 2020).

We overrule Goyens' sole appellate point.

## IV. Conclusion

Because Goyens was not in custody when, in response to a law enforcement officer's question, he acknowledged possessing a firearm, he need not have been read his *Miranda* rights. Therefore, the trial court did not err in denying Goyens' motion to suppress his statement admitting gun possession and the subsequent arrest for possession of illegal drugs found at the jail.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on September 18, 2023
Opinion Delivered October 4, 2023
Do Not Publish

Before Horton, Johnson and Wright, JJ.