**Affirmed as Modified and Memorandum Majority and Dissenting Opinions filed September 2, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00762-CR

---

### TATIANA BAKHOUM, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 5
Harris County, Texas
Trial Court Cause No. 2214948**

---

### MEMORANDUM MAJORITY OPINION

Appellant Tatiana Bakhoum was convicted of driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a). In her first issue, appellant challenges the trial court's denial of her motion to suppress. In her second issue, she argues there was error in the jury charge because the instruction given under Code of Criminal Procedure article 38.23(a) did not apply the law to the facts of the case. We affirm the judgment of the trial court, though we modify the judgment

to correct a conflict in the judgment regarding the suspension of appellant's sentence.

## I. BACKGROUND

Appellant was involved in a collision with a police vehicle driven by Officer Ken Neimeyer around 2 a.m. near downtown Houston in July 2018. At the time of the collision, the vehicle driven by Neimeyer had its lights and sirens activated, indicating that it was operating as an authorized emergency vehicle. *See* Tex. Transp. Code Ann. §§ 541.201(1), 546.001(2)(3)(4), .003. Neimeyer was crossing from the right side of the road to the left side. As he moved into her lane, Neimeyer collided with appellant.

In the video from the body camera of Neimeyer's partner, Neimeyer yells, with profanity, that appellant hit him, just before he got out of his police vehicle to approach appellant. Neimeyer testified that as he approached the vehicle he noticed appellant had a "distant stare" and a delayed reaction because it "took her a few seconds to turn her head towards [him]." He observed that appellant's "eyes were a little glassy" and "a little bloodshot," and he "smell[ed] a strong odor of alcoholic beverage coming from inside the vehicle." Neimeyer opened appellant's car door, asked her to get out, and immediately handcuffed her. Appellant was placed in the back of the police vehicle. She did not receive any warnings or admonitions.

Neimeyer was not trained to conduct field-sobriety tests, so he requested a DWI officer be dispatched to complete the investigation. Appellant submitted to field-sobriety tests as well as a test of her blood alcohol level two hours later. Because her blood alcohol level exceeded the legal limit, she was charged by information with the offense of driving while intoxicated. Following trial in June 2019, a jury found appellant guilty of the charged offense. The trial court assessed punishment at 180 days in the Harris County Jail, but suspended appellant's

2

sentence and placed appellant on community supervision for ten months, with a $300.00 fine. Tex. Penal Code Ann. § 49.04(b); Tex. Code Crim. Proc. Ann. art. 42A.053.

## II.    ANALYSIS

### A.    Correction to the judgment

Although no party has raised this issue, we first address a conflict in the judgment regarding appellant's punishment. The first page of the judgment correctly reflects the trial court's pronouncement of sentence that the court suspended appellant's punishment and placed appellant on community supervision for ten months. However, the trial court also checked boxes next to the following statements in the judgment that created a conflict:

> County Jail-Confinement/ Confinement in Lieu of Payment. The Court ORDERS Defendant immediately committed to the custody of the Sheriff of Harris County, Texas on the date the sentence is to commmence. Defendant shall be confined in the Harris County Jail for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the Harris County District Clerk's office. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines. court costs, and restitution as ordered by the Court in this cause.
>
> . . . .
>
> The Court ORDERS Defendant's sentence EXECUTED.

This court has the power to correct and reform the judgment of the court below "to make the record speak the truth" when it has the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc) (Onion, J., retired presiding judge of Court of Criminal Appeals, sitting by designation and writing en banc court's opinion); *see French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting reasoning of

3

*Asberry*). In a criminal case, Texas Rule of Appellate Procedure 43.2(b) (court of appeals may "modify the trial court's judgment and affirm it as modified") and its predecessors function in part as a means for the appellate court to render judgment nunc pro tunc when the written judgment does not reflect what occurred in open court at trial. Tex. R. App. P. 43.2(b); *see Asberry*, 813 S.W.2d at 529 ("Appellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc where the evidence necessary to correct the judgment appears in the record."). The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court. *Asberry*, 813 S.W.2d at 529–30. "The appellate court may act sua sponte and may have the duty to do so." *Id*. at 530.

Here, the record reflects that appellant's sentence was suspended and appellant was placed on community supervision. Therefore, we conclude that the trial court's application of the statements listed above were clerical errors, and we modify the judgment to delete those statements and substitute the following:

> The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

*See* Tex. R. App. P. 43.2(b); *see Asberry*, 813 S.W.2d at 529–30.

## B. Motion to suppress

In issue 1, appellant argues that the trial court abused its discretion by denying her motion to suppress all evidence obtained after she was handcuffed and

placed in Neimeyer's police vehicle.[1] She argues that Neimeyer had no probable cause to arrest her when he handcuffed her and placed her in his patrol vehicle, and therefore all evidence gathered was inadmissible, including all statements, standardized field-sobriety tests, and the breath test.

## 1.    Standard of review

We review a trial court's ruling on a motion to suppress under a bifurcated standard, reviewing fact findings for an abuse of discretion and applications of law de novo. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019); *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). In doing so, we afford almost total deference to the trial court's determination of historical facts, especially when it is based on assessment of a witness's credibility, as long as the fact findings are supported by the record. *See Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply the same deferential standard when reviewing the court's ruling on mixed questions of law and fact when resolution of those issues turns on an evaluation of credibility. *Johnson*, 414 S.W.3d at 192. We review de novo the trial court's application of the law to the facts and its resolution of mixed questions of law and fact that do not depend upon credibility assessments. *Id.* Finally, we view the record in the light most favorable to the trial court's determination and will reverse its ruling only if it was arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

If the trial court does not make explicit findings of fact, we assume it made

---

[1] Appellant argues that the trial court's denial of her motion to suppress violated her rights provided by the Fourth Amendment and Fourteenth Amendments of the U.S. Constitution, Texas Constitution article I, section 9, and Code of Criminal Procedure article 38.23. U.S. Const. Amends. IV & XIV; Tex. Const. art. I § 9; Tex. Code Crim. Proc. Ann. art. 38.23. Appellant does not separately argue each of these violations.

implicit fact findings that support its ruling as long as those fact findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When no written findings are stated or requested, as here, we must uphold the ruling on any applicable theory of law that is supported by the evidence when viewed in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 819 n.21 (Tex. Crim. App. 2006); *Ross*, 32 S.W.3d at 855–56. We review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 818–19.

## 2. Probable cause to arrest appellant

Rejecting the State's argument that appellant was only subject to an investigative detention after she was handcuffed and placed in the police vehicle, the trial court ruled that appellant was in custody after she was handcuffed. Because appellant did not receive the warnings required under Code of Criminal Procedure article 38.22, sections 2(a) and 3(a)(2), the trial court excluded all statements made by appellant from the record. Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2(a), 3(a)(2); *see also Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966). However, the trial court held there was probable cause to arrest appellant and denied her motion to suppress subsequent evidence gathered by police. No findings of fact or conclusions of law are contained in the record. The reasoning of the trial court evolved over the course of the suppression hearing, though the trial court did make the following statement near the conclusion of the hearing: "There's plenty to go on probable cause. . . . I think the mere fact she was either not in a position to or refused to yield to the emergency vehicle is enough for them to stop her and confront her and charge her with a violation. "

Appellant argued to the trial court, and here on appeal, that Neimeyer never

articulated any criminal offense or traffic violation committed by appellant other than DWI. Appellant further cites Neimeyer's testimony that he did not believe he had probable cause when he placed appellant in handcuffs. Appellant therefore asserts that the trial court's determination of probable cause cannot be supported on the basis of an "unknown traffic violation." In response, the State makes three alternative arguments. First, the State argues that probable cause existed to arrest appellant for DWI based on the totality of the circumstances. Second, the State alternatively argues that Neimeyer had probable cause to arrest appellant for the "traffic violation leading the collision." Finally, the State alternatively argues that even if Neimeyer lacked probable cause for any offense, his actions amounted to an investigative detention requiring reasonable suspicion that appellant had committed an offense.[2] *See Hauer v. State*, 466 S.W.3d 886, 891 (Tex. App.— Houston [14th Dist.] 2015, no pet. (holding defendant was only detained pending DWI investigation when he was handcuffed and placed in back of patrol car). We must uphold the trial court's ruling on any applicable theory of law that is supported by the evidence when viewed in the light most favorable to the trial court's ruling. *See Kelly*, 204 S.W.3d at 818–19 n.21. We begin with whether there was probable cause to arrest appellant for DWI.

"'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which [the officer] has reasonably trustworthy information are sufficient to warrant a prudent [individual] in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see* Tex. Code Crim. Proc. Ann. art. 14.01(b) ("A peace officer may arrest an offender without a warrant

---

[2] Neimeyer testified that he intended to detain appellant for further investigation by a DWI investigator. He claims he placed appellant in handcuffs for his safety, as well as for hers.

for any offense committed in his presence or within his view."). Probable cause must be based on specific, articulable facts rather than a law-enforcement officer's mere opinion. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). "The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer . . . and it requires a consideration of the totality of the circumstances facing the arresting officer." *Amador*, 275 S.W.3d at 878 (internal citations omitted). A finding of probable cause requires "more than bare suspicion" but "less than . . . would justify . . . conviction." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

The offense of driving while intoxicated occurs when an individual is intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code Ann. § 49.04. It is undisputed that appellant was operating a motor vehicle in a public place. Therefore, the issue before this court is whether Neimeyer had reasonably trustworthy information that appellant was intoxicated at the time he handcuffed her and took her into custody. The law defines "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . or having an alcohol concentration of 0.08 or more." Tex. Penal Code Ann. § 49.01(2).

It is undisputed that Neimeyer's police vehicle collided with appellant's vehicle. He testified that he was responding to an emergency call to assist another officer in a vehicle pursuit. He activated the lights and sirens on his police vehicle and began driving towards the location of the pursuit. Neimeyer was also following another police vehicle with its lights and sirens activated and trying to work his way over from the right-hand lane to the left-hand lane. It was then that the collision with appellant occurred. The collision itself and the actions of appellant before the collision are not captured in any of the body camera videos. Neimeyer

testified that when he approached appellant's vehicle, appellant appeared "intoxicated." He observed that appellant had a distant stare, a delayed reaction to his appearance, and glassy eyes. After opening the door, Neimeyer could smell the strong odor of alcohol coming from inside the vehicle. The trial court also viewed the body camera videos of Neimeyer and his partner. Deferring to the trial court's determinations of credibility, the body camera videos also support the legal ruling of the trial court.

Texas law requires that drivers yield the right-of-way to authorized emergency vehicles, immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway clear of any intersection, and stop and remain standing until the authorized emergency vehicle has passed. Tex. Transp. Code Ann. § 545.156(a). Though appellant's counsel argued to the jury that blame for the collision lay with Neimeyer, it was still apparent that appellant did not abide by the rules of the road. *See id*. Neimeyer's testimony established appellant's inappropriate response to the approach of police vehicles with their lights and sirens activated before the collision: "[I]t appeared to me she was having a hard time driving at that point. There was two patrol cars with lights and sirens on, had already passed her by and no reaction, no ability to stop at that point for us." Thus, appellant's lack of reaction to the approach of authorized emergency vehicles and the collision is some evidence of loss of mental faculties; it was not necessary for Neimeyer to state that he witnessed appellant violate a traffic law.

We must look to the totality of the circumstances facing the arresting officer. *Amador*, 275 S.W.3d at 878. In light of appellant's lack of response to and collision with an authorized emergency vehicle, her response to Neimeyer post-collision, and the strong smell of alcohol in appellant's vehicle, Neimeyer had

sufficient knowledge and information at the scene to form a reasonable belief that appellant committed the offense of DWI. *See Hyland v.* State, 574 S.W.3d 904, 915 (Tex. Crim. App. 2019) ("facts showing the strong odor of alcohol coming from a driver who has recently been involved in a serious motor vehicle accident resulting in significant injuries demonstrate probable cause"); *Pesina v. State*, 676 S.W.2d 122, 124 (Tex. Crim. App. 1984) (recognizing probable cause that evidence of driving while intoxicated would be found in suspect's blood when defendant was involved in a collision and had a strong odor of alcohol on his breath); *Chilman v. State*, 22 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (probable cause existed when defendant was seated in driver's seat with engine running, had slurred speech, bloodshot eyes, odor of alcohol on breath, and was evasive in responding to questions).

Though appellant relies on Neimeyer's testimony that he did not believe he had probable cause to arrest appellant for DWI, probable cause is a legal determination and not one of historical fact.[3] *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008) ("legal rulings on 'reasonable suspicion' or 'probable cause' . . . are legal conclusions subject to de novo review"); *Torres*, 182 S.W.3d at 902 ("probable cause must be based on facts, not opinions"). Though a peace officer's opinion is a factor to be considered in determining whether an arrest has taken place, it does not bind the trial court as to probable cause. *See Amores v. State*, 816 S.W.2d 407, 412 (Tex. Crim. App. 1981) ("the officer's opinion is not the controlling factor"). Therefore, the trial court was entitled to disregard Neimeyer's analysis of the probable-cause determination and reach its own conclusion. *Amador*, 275 S.W.3d at 878 (citing *Beck*, 379 U.S. at 97) (test for probable cause is unrelated to subjective beliefs of arresting officer).

---

[3] The State did not object to appellant's questioning of Neimeyer about probable cause and has not raised any admissibility issues on appeal.

The dissent concludes that Neimeyer's statement that he did not believe he had probable cause to arrest appellant is a judicial admission, and controlling in the probable-cause analysis. And at first blush, we acknowledge that it seems counterintuitive to disregard a statement made by the arresting officer as to probable cause. But just as the trial court is entitled to disregard a peace officer's legal conclusion that he or she *had* probable cause to arrest an individual, the trial court is free to disregard a peace officer's legal conclusion that he or she *did not* have probable cause. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The specific legal conclusion reached by a specific peace officer is, therefore, not controlling. And as the Supreme Court has explained, de novo review of the determination of probable cause results in a unitary system of law rather than a patchwork of decisions that turn on specific conclusions reached by individual trial judges and peace officers. *See id*. at 697. Therefore, neither the trial court's determination nor Neimeyer's determination of probable cause is controlling in our determination.

The facts here present a close case. And, in reaching our conclusion, we do not hold that any one of Neimeyer's observations, alone, was sufficient to establish probable cause. *See Illinois v. Gates*, 462 U.S. 213, 238 n.11 (1983) ("There are so many variables in the probable cause equation that one determination will seldom be a useful "precedent" for another."). But in consideration of the totality of circumstances, we conclude the facts were sufficient for a prudent person to believe that appellant had been driving while intoxicated at the time Neimeyer

11

placed in her custody. Therefore, we hold the trial court did not err in denying appellant's motion to suppress. *See Story*, 445 S.W.3d at 732 ("We will uphold the judgment if it is correct on some theory of law applicable to the case, even if the trial judge made the judgment for a wrong reason."). Based on this conclusion, we need not address the State's alternative theories supporting the ruling of the trial court. *See* Tex. R. App. P. 47.1.

We overrule appellant's issue 1.

## C.    Jury-charge error

During the jury-charge conference, appellant requested the following jury charge instructions: (1) an article 38.23(a) instruction regarding violations of the law by police officers; (2) an article 38.23(a) instruction regarding arrest without probable cause; (3) an instruction regarding the voluntariness of the breath test; and (4) an instruction regarding spoliation of evidence. The trial court refused all of appellant's proposed charge instructions, but agreed to include the following instruction taken almost verbatim from Code of Criminal Procedure article 38.23(a):

> "Article 38.23. Evidence not to be used." No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America shall be admitted in evidence against the accused on the trial of any criminal case.
>
> If the jury finds that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

No application paragraph, applying the law to the disputed facts, was included.

In issue 2, appellant contends that the trial court erred by not instructing the jury how to apply the article 38.23(a) instruction to the specific disputed facts in

the case.

### 1. Applicable law

A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we must determine whether the charge contains any actual error; second, if there is actual error, we must determine whether the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 744; *Abdnor*, 871 S.W.2d at 731–32. If the defendant preserved the error by timely objecting to the charge, an appellate court will reverse so long as the defendant demonstrates that she suffered some harm. *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). By contrast, if a defendant does not properly preserve error by objection, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*." *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).

### 2. Exclusionary rule

Code of Criminal Procedure article 38.23(a) prohibits the use of evidence obtained in violation of the Constitutions or laws of either the United States of America or the State of Texas. Tex. Code Crim. Proc. Ann. art. 38.23(a). The article further provides:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any evidence so obtained.

*Id*.

To be entitled to an article 38.23(a) instruction, "the defendant must show

that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible." *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). When a disputed, material issue of fact is successfully raised, the terms of the statute are mandatory, and the jury must be instructed accordingly. *Id*. Evidence to justify an article 38.23(a) instruction can derive "from any source," even if the evidence is "strong, weak, contradicted, unimpeached, or unbelievable." *Id*. (quoting *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)). However, to raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Madden*, 242 S.W.3d at 513. A cross-examiner's questions do not create a conflict in the evidence, but a witness's answers to those questions might. *Id*. When the issue raised by the evidence at trial does not involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court. *Robinson*, 377 S.W.3d at 719.

To perform this analysis, we consider the evidence presented at trial. There was no disagreement about material, historical facts in the case. Neimeyer testified that appellant had a distant stare, a delayed reaction to his appearance, and glassy eyes. The body-camera-video evidence did not conflict with the evidence of these facts. After opening the door, Neimeyer testified he smelled a strong odor of alcohol coming from inside the vehicle. There was no affirmative evidence that Neimeyer did not smell alcohol. The real dispute at trial was regarding the characterization of Neimeyer's actions, and the legal consequences of his observations. Therefore, the legal disagreement was "for the trial court to arbitrate,

14

according to the law, not for the jury to determine as if it were an ambiguous or contested question of historical fact." *Robinson*, 377 S.W.3d at 720. Though appellant was not entitled to an article 38.23(a) instruction, the trial court nonetheless gave an instruction, so we must consider whether the instruction was erroneous.

In instructing the jury, the trial judge should include the "factual issue for the jury to decide, along with an explanation of the pertinent law." *See Madden*, 242 S.W.3d at 511–13. It is well settled that "[t]he jury decides facts; the judge decides the application of the law to those facts." *Id.* at 511. The entire purpose of the jury charge is to inform the jury of the applicable law and guide the jury in its application to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion." *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977). A charge that simply regurgitates the law does little, if anything, to help guide the jury. *See id.* Though the jury was given an instruction, it simply recited the text of article 38.23(a) with little guidance in applying the law to the facts. We conclude that the charge was defective, because it did not apply the law to the facts of the case or ask that the jury resolve any disputed fact issue. *Davis v. State*, 905 S.W.2d 655, 663 (Tex. App.—Texarkana 1995, pet. ref'd). Therefore, we procced to the harm analysis. *See Ngo*, 175 S.W.3d at 744; *Abdnor*, 871 S.W.2d at 731–32.

### 3. Harm analysis

In this case, appellant did not preserve error on her complaint of charge error. In the charge conference, appellant's counsel proposed an article 38.23(a) instruction regarding violations of the law by police officers and an article 38.23(a) instruction regarding arrest without probable cause. The trial court did not

15

incorporate either proposal into the jury charge. However, when appellant's counsel was asked if he objected to the charge, he made the following statement:

> Yes, Judge. I would have liked — have liked all of my proposed charges in there. And I have provided a copy of my proposed charges to the court reporter to be incorporated into the record. As far as the actual language in this charge, this is good, but I would prefer the additions that I made.

Appellant did not call to the trial court's attention that the charge did not apply the law to the facts of the case. *See Mays v. State*, 318 S.W.3d 368, 383 (Tex. Crim. App. 2010) (general or insufficiently specific objections do not preserve error for appeal). Instead, appellant's counsel told the trial court the language in the charge was "good," though he would have preferred his proposals.

Therefore, any error must be reversed only on a showing that appellant has suffered egregious harm: "To be reversible, any unpreserved jury-charge error must result in egregious harm which affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (citations and internal quotation marks omitted). In *Almanza*, the court of criminal appeals outlined four factors that reviewing courts should consider when determining whether a jury-charge error resulted in egregious harm: "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

We begin with the first *Almanza* factor—the charge itself. Though the charge lacks a paragraph applying article 38.23(a) to the facts, it correctly states the law and mirrors the exact language of article 38.23(a). The language of the

statute instructs the jury that they may disregard evidence obtained in violation of the laws of Texas and the Constitution. This first factor weighs against a conclusion of egregious harm.

The second factor—the state of the evidence, including contested issues—also weighs against the conclusion of egregious harm because we have determined that appellant was not entitled to an article 38.23(a) instruction.

The third factor—arguments of counsel—also weighs against a conclusion of egregious harm. Appellant's counsel discussed at length in his jury argument the application of article 38.23(a) to the facts of the case, including the following:

> We also have an arrest that takes place inside 25 seconds. If you count the seconds from the time he walks out of his car and walks over to her car and the time she's in cuffs, that's seconds. He did an entire DWI investigation in 25 seconds. Except, he didn't. He just looked at her and decided she was drunk.
>
> . . . .
>
> If — he violated her rights at that point when he arrested her without an investigation, without any evidence, then at the point, anything that comes after that, still, nothing. No standardized field sobriety tests, no breath test, nothing. Okay. And if that's the case, if you find that he violated her rights when he put the cuffs on her illegally — because he definitely did not have anywhere close to probable cause to arrest her — at that point, everything after that is gone. Your verdict would be not guilty.

The court of criminal appeals has held that jury arguments bear significantly on an *Almanza* analysis. *Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013). Here too, we conclude that the jury arguments, though not a substitute for a proper application paragraph, are relevant to harm. *Id*. at 708. Because the arguments of counsel provided context for the 38.23(a) instruction in the jury charge, we conclude that third factor weighs against a conclusion of egregious harm.

Finally, the fourth *Almanza* factor accounts for any other relevant information in the record. *Id.* at 709. The jury sent a note during its deliberations requesting clarification on whether the law broken was required to be "broken in order to gather evidence intentionally or just breaking a law which leads to discovery of evidence." A proper application paragraph would have narrowed the focus of the jury to specific police actions, rather than allowing the jury to guess at the conduct which would require exclusion of evidence. We conclude that this factor weighs in favor of a conclusion of egregious harm.

Ultimately, the factors weighing against egregious harm outweigh the one factor in favor. Because appellant was not entitled to an article 38.23(a) instruction, the instruction provided by the jury charge provided more protection to appellant than she would have otherwise received. In following the instruction, the jury may have disregarded evidence, which would have benefited appellant. Further, the jury arguments of counsel provided context and clarification to the article 38.23(a) instruction. We conclude no egregious harm resulted from the lack of an application paragraph explaining the application of the article 38.23(a) instruction to the facts of the case.

We overrule appellant's issue 2.

### III. CONCLUSION

We modify the trial court's judgment to correct a conflict in the judgment regarding the suspension of appellant's sentence. Having overruled appellant's two issues on appeal, we affirm, as modified, the trial court's judgment as challenged on appeal. Tex. R. App. P. 43.2(d).


/s/    Charles A. Spain
Justice

Panel consists of Justices Spain, Hassan, and Poissant (Hassan, J., dissenting).

Do Not Publish —Tex. R. App. P. 47.2(b).