# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00795-CR

---

**Bobby J. Williams, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF COMAL COUNTY**
**NO. 2018CR0677, THE HONORABLE RANDAL C. GRAY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Bobby J. Williams appeals his conviction for the Class A misdemeanor offense of driving while intoxicated with an alcohol concentration of 0.15 or more. *See* Tex. Penal Code § 49.04(d). After the trial court denied his pretrial motion to suppress evidence, appellant entered a plea of guilty. The trial court thereafter entered a judgment of conviction and granted appellant the right to appeal. In one point of error, appellant challenges the denial of his motion to suppress evidence. For the following reasons, we affirm the judgment of conviction.

## BACKGROUND

On November 20, 2017, at around 1:20 a.m., a police officer "was dispatched for a possible intoxicated driver" based on information a 911 caller provided, including that the driver's vehicle was a white Honda Accord. The police officer was able to locate the vehicle and initiated the traffic stop. Appellant was the sole occupant in the vehicle, and the officer smelled

an "alcoholic beverage" on appellant's breath and noticed that appellant's eyes were bloodshot. The officer administered field sobriety tests, arrested appellant for driving while intoxicated, and obtained a search warrant to collect a blood specimen from him.[1] Appellant thereafter was charged with operating a vehicle in a public place while intoxicated and with an alcohol concentration of 0.15 or more. *See id.*

Relevant to this appeal, appellant filed a pretrial motion to suppress evidence, seeking to suppress all evidence obtained from the traffic stop on the ground that the stop was without reasonable suspicion. The trial court conducted a hearing on the motion. The witnesses were the officer who initiated the traffic stop and the 911 caller, and the exhibits included an audio recording of the 911 call, a video recording from the officer's patrol car of the traffic stop, and the officer's report.

In the recording of the 911 call, the caller, who was an Uber driver, is heard telling the dispatcher that a "guy took off in [a] white Honda accord and he is drunker than crap." The caller explained that he dropped the man, who was later determined to be appellant, off at a bar; that the man was "wasted"; that the caller "did not realize [the man was] going to pick up [his] car"; and that the caller was following the vehicle. The caller provided the vehicle's license plate number and updates on the vehicle's location and route. The recording of the 911 call also captures the dispatcher relaying the caller's information to officers, including advising them that "[the driver]'s pretty drunk according to the caller," and advising the caller that "[her] officers had eyes" on the vehicle. At the end of the call, the caller confirmed that the police had stopped the vehicle, and the caller provided his name, contact information, and driver's license number.

---

[1] The laboratory report shows that appellant's alcohol concentration was 0.211 grams of alcohol per 100 milliliters of blood.

2

During the hearing, the caller testified that he called 911 "to say that [he] had dropped off a man downtown to pick up his car, and [the man] was just really inebriated and was getting in the car to take off." The caller said that he was following the vehicle when he called 911, and he confirmed that the man whom he dropped off was appellant. The caller testified that he was driving a Chevy Equinox, "very elbow to elbow"; as an Uber driver, he encountered intoxicated individuals because he worked the "late night overnight shift"; and based on his experience, he believed that appellant was intoxicated. He explained that appellant "leaned into [him] a lot and was just simply breathing on him" and had "slurred speech" and that he was concerned when appellant drove off "[b]ecause [appellant] was inebriated." During cross examination, the caller testified that he continued to speak with the 911 dispatcher after the police had stopped appellant's vehicle and that he did not speak to the officers on scene.

The officer testified that he had been a patrol officer for six years, trained in detecting intoxication, and "probably done at least 50 [DWI investigations]." He testified that the types of things he looked for concerning a suspected DWI were "variances of speeds, if the person is unable to maintain a single lane of travel or they start to weave within their lane." Concerning this case, the officer testified that he initiated the traffic stop after he "was dispatched for a possible intoxicated driver" in an area where "there are several bars around that location" and that "they were giving [him] updates as to which route [the driver] was taking." The officer explained that before he initiated the traffic stop, he called and spoke with the 911 caller and observed appellant's vehicle being driven above the speed limit, at a "variance of speeds" between 21 and 38 miles per hour in a 35 miles per hour speed zone, and that it was

3

swerving within its lane.[2] He explained that he would not "typically" see that type of variance in speed in that area and that the time of early in the morning "would be considered suspicious with the totality of everything that [he] had been told." During cross examination, the officer testified that he "[was] not sure the last time [his radar] was calibrated" and that when he paced appellant's vehicle, it was traveling below the speed limit. The video recording from the patrol car shows appellant's vehicle moving from the center or right side of its lane to the far left and back.

At the conclusion of the hearing, the trial court denied appellant's motion to suppress evidence. Appellant thereafter pleaded guilty, and the trial court entered a judgment of guilty, assessing punishment at 365 days' confinement and a $480 fine but suspending imposition of the confinement sentence and placing him on community supervision for 18 months. This appeal followed.

## ANALYSIS

In his sole point of error, appellant argues that the trial court erred when it denied his motion to suppress and found that there was reasonable suspicion to initiate the traffic stop for speeding or driving while intoxicated.

*Standard of Review and Applicable Law*

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (citing *State v. Dixon*,

---

[2] The officer answered affirmatively when asked if appellant was exceeding the speed limit and testified that "[appellant] would touch the median, the line right there. He never crossed over it, but he would kind of drift to that line and then come back and then drift to the line and come back."

206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When the trial court does not make explicit findings of fact, as is the case here, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018) (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). Moreover, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case. *Id.* (citing *Arguellez v. State*, 409 S.W.3d 657, 662–63 (Tex. Crim. App. 2013)); *see Story*, 445 S.W.3d at 732.

"Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *see Ford*, 158 S.W.3d at 492 (stating that when defendant establishes that he was detained without warrant, burden shifts to State to establish reasonable suspicion to justify detention). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler*, 348 S.W.3d at 914. This standard "looks to the totality of the circumstances," asks "whether there was an objectively justifiable basis for the detention," and "disregards the actual subjective intent of the arresting officer." *Id.*; *see State v. Garcia*, 569 S.W.3d 142, 151–52 (Tex. Crim. App. 2018) (noting that trial court must assess "[w]hether the totality of the facts available to the officer, and reasonable inferences therefrom, objectively suffice"). "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular noncriminal acts." *Derichsweiler*, 348 S.W.3d at 914 (quoting *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)).

5

Further, "the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, 'the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.'" *Id.* (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)). "A 911 police dispatcher is ordinarily regarded as a 'cooperating officer' for purposes of making this determination." *Id.* And "information provided to police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable." *Id.* at 914–15. The question in this scenario is "whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Id.* at 915.

With these standards in mind, we turn to appellant's arguments challenging the trial court's denial of his motion to suppress evidence.

### *Did the trial court abuse its discretion in denying appellant's motion to suppress?*

In his point of error, appellant challenges the trial court's denial of his motion to suppress evidence based on his assertion that the record does not support that the officer had reasonable suspicion to initiate the traffic stop for speeding or driving while intoxicated. *See Lerma*, 543 S.W.3d at 190 (stating that appellate court assumes that trial court made implicit findings of fact supported by record).

As to his rate of speed, appellant contends that the State was required to prove that the officer employed his radar correctly and relies on the officer's testimony that he did not know if his radar was calibrated as support for his position that the trial court "abused its

6

discretion in finding that the radar evidence provided reasonable suspicion for the stop." Appellant argues that "[a]n objectively reasonable police officer would not rely upon an uncalibrated radar to stop or cite someone for speeding." He also relies on the officer's testimony that appellant was not speeding when the officer paced appellant's vehicle.

The officer's testimony about his radar's calibration and appellant's vehicle's speed when paced, however, was not dispositive of whether the officer had reasonable suspicion to initiate the traffic stop. *See Icke v. State*, 36 S.W.3d 913, 916 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) ("A stop that meets the test for reasonable suspicion is lawful even if the facts supporting the stop are ultimately shown to be inaccurate or false."); *see also State v. Garrett*, Nos. 03-17-00333-CR, 03-17-00334-CR, 2018 Tex. App. LEXIS 4086, at *18–19 n.1 (Tex. App.—Austin June 7, 2018, no pet.) (mem. op., not designated for publication) ("Reasonable suspicion does not require certitude that an offense occurred and instead only requires that the investigating officer reasonably believe that 'a violation was in progress.'" (quoting *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd))); *Trevino v. State*, No. 03-16-00017-CR, 2017 Tex. App. LEXIS 10098, at *11–13 (Tex. App.—Austin Oct. 27, 2017, no pet.) (mem. op., not designated for publication) (observing that reasonable suspicion determination is made by considering totality of circumstances and concluding that "disputed fact" of whether officer's radar gun was properly calibrated was not "essential" to deciding lawfulness of traffic stop); *Warren v. State*, 05-08-01431-CR, 2009 Tex. App. LEXIS 8296, at *12–13 (Tex. App.—Dallas Oct. 29, 2009, no pet.) (mem. op., not designated for publication) (explaining that "State was required to show only that [officer] reasonably believed appellant was violating the speeding statute").

Appellant was not tried for speeding, and the record supports a finding that speeding was not the sole basis for the traffic stop. *See Derichsweiler*, 348 S.W.3d at 914 (looking to totality of circumstances); *see also Warren*, 2009 Tex. App. LEXIS 8296, at *12–13 (explaining that "appellant was not being tried for speeding, nor was the State required to prove he was speeding in order to meet its burden of showing that [officer] had reasonable suspicion to stop his vehicle"). The officer was dispatched concerning a "possible intoxicated driver," and he was experienced and trained to detect intoxication, having "probably done at least 50 [DWI investigations]." He testified that the types of things that he was looking for when there was a suspected DWI included "variances of speeds" and "start[ing] to weave within their lane," that he observed both in addition to speeding prior to initiating the traffic stop, and that appellant was driving during the early morning hours in a location where "the surrounding area . . . there are several bars." *See Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (stating that time of day and "location near a bar district where police have made numerous DWI arrests" are relevant factors in determining reasonable suspicion). And the 911 caller is heard on the 911 recording stating that appellant was "drunker than crap" and "wasted."

Appellant argues that the trial court abused its discretion to the extent it relied on the officer's testimony that was unsupported by other evidence because his testimony was unreliable and that the remaining evidence was not sufficient "for an objectively reasonable officer to have reasonable suspicion of driving while intoxicated." As support, appellant relies on: (i) the portion of the video recording of the traffic stop showing appellant signaling his lane changes shortly before being stopped; (ii) his characterization of the video recording showing his movement within his lane as not continuous and "at most" twice and his driving "otherwise" as "steadily within his lane"; and (iii) inconsistencies between the officer's report and testimony

8

and the recorded 911 call and the 911 caller's testimony. The officer testified that he spoke directly with the 911 caller, and his report contains statements that the 911 caller made to him,[3] but the 911 caller testified that he spoke with the 911 dispatcher and not the officer. The recording of the 911 call reflects that the 911 dispatcher was relaying information provided by the caller to officers but that the caller was not speaking directly with the officers on scene.

We, however, look to the totality of the circumstances to see "whether there was an objectively justifiable basis for the detention," and not the subjective intent of the arresting officer, and consider the cumulative information known to the cooperating officers, including the 911 dispatcher, in determining whether reasonable suspicion existed for the traffic stop. *See Derichsweiler*, 348 S.W.3d at 914–15. The trial court reasonably could have found credible and reliable the testimony of the 911 caller, who called to report that appellant was driving while intoxicated, identified himself on the recording, and relayed appellant's route by following appellant's vehicle until the police arrived on the scene. *Id.* (explaining that information provided to police from citizen-informant who identified himself and may be held to account for accuracy and veracity of report may be regarded as reliable); *see also St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (explaining that trial court in suppression hearing is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony").

Given this evidence, even if we were to assume that portions of the officer's testimony were not reliable, the trial court reasonably could have found that the "cumulative information" known to the officers, "viewed through the prism of the detaining officer's

---

[3] The officer's report includes that the 911 caller "stated that [appellant]'s speech was slurred to the point that it was hard to understand him" and that "[appellant] began to act wildly while in the back seat of his vehicle, further arousing his suspicion of intoxication."

particular level of knowledge and experience," objectively supported a reasonable suspicion that appellant was driving while intoxicated. *See Derichsweiler*, 348 S.W.3d at 915; *see also Marrero v. State*, No. 03-14-00033-CR, 2016 Tex. App. LEXIS 352, at *12–13 (Tex. App.—Austin Jan. 14, 2016, no pet.) (mem. op., not designated for publication) (concluding that officer had reasonable suspicion to stop appellant for driving while intoxicated based on totality of circumstances including time of day in which appellant was driving, location where appellant was found, observed instances of erratic driving, and speed at which appellant was driving). Thus, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress evidence. *See Story*, 445 S.W.3d at 732.

## CONCLUSION

For these reasons, we overrule appellant's point of error and affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed:   September 2, 2021

Do Not Publish

10